Michael Henry GRIFFIN, Appellant,

v.

The STATE of Texas, Appellee.

No. 14–94–00443–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

Oct. 31, 1996.

Edward A. Mallett, Martin D. Mayne, Houston, for appellant.

William J. Delmore, III, Houston, for appellee.

Before LEE, AMIDEI and EDELMAN, JJ.

## OPINION

AMIDEI, Justice.

Michael Henry Griffin appeals his conviction by a jury for theft over $20,000.00. The jury assessed his punishment at ten years imprisonment and a $5,000.00 fine, enhanced by one prior felony conviction. In four points of error, appellant contends the trial court erred by (1) refusing appellant's motion for an instructed verdict because the evidence was insufficient to corroborate the accomplice witness' testimony, (2) refusing appellant's motion for an instructed verdict because the evidence was legally insufficient to prove appellant guilty of theft, (3) & (4) overruling appellant's objections to improper prosecutorial remarks during jury argument. We affirm.

Tim Richert was employed as the financial officer and assistant executive director of Coastal Water Authority (CWA), a governmental entity created to supply untreated water to industrial plants along the Houston ship channel. Richert had limited authority to make investments for CWA and had made some speculative investments that were disapproved by CWA's attorneys. Thereafter, Richert obtained an assumed name certificate for a nonexistent business called "Coastal Water Association" and opened a bank account at the First Republic Bank under that name. Richert used this account to deposit profits from investments of CWA funds which he used for personal purposes. On January 29, 1988, Richert went to the First Republic Bank and gave an officer, Irma Blue, a note on which he had written "Jancik Concrete Specia*list*, Inc.," the name and routing number of the Jersey Village Bank, and the Jancik concrete company's account number and requested that $5,000,-000.00 be wired to the Jancik account. Jancik was owned by appellant at this time under the name Jancik Concrete Specia*lties*, Inc., but the account number at the Jersey Village Bank was the same as the one on Richert's note given to Irma Blue. Richert also obtained a $5,000,000.00 cashier's check payable to "Jancik Concrete Specialist, Inc." Richert told Irma Blue he was purchasing some sort of business or building. Richert testified that Steven Geri provided him with the name and number of the Jancik account. Richert instructed a courier to deliver the five million dollar cashier's check to an address provided by Geri and left Houston on an airplane; he was arrested by the FBI three years later. Richert was subsequently convicted in federal court for wire fraud and also pleaded guilty to the state charge of theft by a public servant, and agreed to testify against appellant and other accomplices in exchange for a twenty year sentence, with credit for time served in federal custody. Richert testified for the state and denied ever meeting appellant and denied

signing a contract of sale wherein he was designated the buyer of Jancik for $500,-000.00. Richert could not identify appellant in court.

Patsy Smart was a teller in the wire department at the Jersey Village Bank on January 28, 1988; she testified that appellant called the bank and talked to her on that date and gave Ms. Smart his correct name. He asked Ms. Smart if a wire transfer of money had come in for his account, not specifying the amount, and Ms. Smart advised him nothing had come in yet. Appellant called her again on January 29, 1988, and asked her if a $5,000,000.00 wire transfer had come in and Ms. Smart advised him he would have to call her back on Monday, February 1, 1988, because they had closed the wire department for the day. Appellant gave Ms. Smart his telephone number and asked her to call him. On Monday, February 1, 1988, appellant called Ms. Smart and she advised him the $5,000,000.00 wire transfer had come in. Later than morning, appellant personally went to the Jersey Village Bank and talked to Ms. Smart about getting $200,000.00 in cash from his account. Ms. Smart told appellant it would take a few days to get that much cash together. Ms. Smart identified appellant in the court room.

Susan Mathews was the Jersey Village Bank teller supervisor on February 1, 1988, and she testified that she discussed the wire transfer with Ms. Smart. She also testified that appellant had an average balance in his account of about $2,300.00 per month until that day. She testified she talked to appellant about withdrawing $200,000.00 in cash and that it would take some time. She identified appellant in the court room.

Appellant left the Jersey Village Bank and went to a branch office of Dean Witter investment brokers. He talked to Don Harris, branch manager, who testified that appellant showed him the $5,000,000.00 cashier's check made out to "Jancik Concrete Specialist, Inc." and told Mr. Harris he wanted to purchase $4,500,000.00 in "bearer bonds" and $500,000.00 in gold. Mr. Harris testified that bearer bonds have not been issued since 1983 or 1984 but old bonds could still be purchased. Mr. Harris testified that appellant wanted the bearer bonds to put up as collateral for a foreign work project. Appellant told Mr. Harris that he got the money from the Coastal Water Association along with another $5,000,000.00 sent to his account by wire transfer from them. Mr. Harris told appellant to endorse the $5,000,000.00 check and then Mr. Harris made a photocopy of it which was placed into evidence as State's Exhibit 100. The photocopy was of a cashier's check, drawn on First Republic Bank, showing "COASTAL WATER ASSOCIATION" as the purchaser, dated January 29, 1988, in the sum of $5,000,000.00, payable to the order of "JANCIK CONCRETE SPECIALIST, INC." and it was endorsed on the reverse side: "Jancik Concrete Spec. Inc." and signed by Michael H. Griffin, President, Fed. ID–74–1699664–B. Mr. Harris returned the check to appellant and told him Dean Witter could not accept the check made out in this fashion and that it would have to be payable directly to Dean Witter and not be a third party check. Mr. Harris called Jersey Village Bank who verified the $5,000,-000.00 account in Jancik's name. The First Republic Bank verified that the cashier's check for $5,000,000.00 was valid. Mr. Harris then called the FBI and later called Coastal Water Authority and reported the transaction to Mr. Sam Dixon, executive director. Mr. Harris checked around the county and state in an attempt to locate a "Coastal Water Association" and found no such governmental entity.

The FBI went to appellant's concrete business the next day, February 2, 1988, and talked to appellant about his attempted purchases at Dean Witter. Appellant produced a copy of a one page contract bearing the signature of Tim Richert and bearing the typewritten date of January 29, 1988. The instrument recites that it is a contract to sell 10,000 shares of stock of Jancik Concrete Specialties, Inc., to Tim Richert, buyer, as "agent for C.W.A. Harris County, Texas," and that "buyer is acting as a blind purchaser and seller will not disclose who buyer is, until in writing, is allowed to." The contract then recites the sale will be closed on February 1, 1988. The contract recites the purchase price of the business to be five hun-

dred thousand dollars, "to be paid by buyer to seller on" February 1, 1988. Appellant told FBI agent Tom Doktor that Richert gave him the cashier's check for $5,000,-000.00, which was a "separate deal," and had asked appellant to go to Dean Witter and purchase bearer bonds for Richert. Agent Doktor testified appellant did not give him any explanation for Richert's need for the bearer bonds. Appellant told Doktor that he had given the cashier's check back to Tim Richert on February 1, 1988.

Special Agent Picard testified the cashier's check for $5,000,000.00 was never recovered and that all wire transfers by Tim Richert were canceled. Picard showed appellant two photographs of Tim Richert obtained from Richert's wife and appellant stated that the person in the photographs was not the person who met with him on several occasions and purchased his company.

In point of error one, appellant claims the trial court erred in refusing appellant's motion for directed verdict of not guilty because the evidence was insufficient to corroborate the accomplice witness's (Richert) testimony. In point of error two, he likewise claims error in refusing his motion to grant a directed verdict because the evidence is not legally sufficient to prove appellant aided the commission of theft. Appellant argues there is no nonaccomplice evidence that tends to connect him to the commission of the theft from the owner (CWA) of their property. He further argues the evidence shows only that he was engaged in a legitimate business transaction, "albeit somewhat uncommon, and he ended up another victim of Richert."

■ We will review appellant's points of error one and two together as a challenge to the sufficiency of the evidence to sustain his conviction. A challenge to the trial judge's ruling on a motion for an instructed verdict is in actuality a challenge to the sufficiency of the evidence to support the conviction. In reviewing the sufficiency of the evidence, we consider all the evidence, both state and defense, in the light most favorable to the verdict. *Madden v. State*, 799 S.W.2d 683, 686 (Tex.Crim.App.1990). If the evidence is sufficient to sustain the conviction, then the trial judge did not err in overruling appel-

lant's motion. *Id.* A challenge to the sufficiency of the evidence to corroborate the testimony of an accomplice is a challenge to the sufficiency of the evidence to support the jury's verdict on guilt or innocence. *Munoz v. State*, 853 S.W.2d 558, 560 (Tex.Crim.App. 1993). If the nonaccomplice evidence fails to connect appellant to the offense, the evidence is insufficient to support appellant's conviction and an acquittal results. *Id.*

■ Appellant was indicted for theft and, in a separate paragraph, as a party to the theft with Richert. The application paragraph of the jury charge authorized the jury to find appellant guilty if they believed from the evidence that Richert, and/or Richert and Stephen Geri, exercised control over money owned by Coastal Water Authority, of over $20,000.00, without its effective consent, and that appellant, "with the intent to promote or assist the commission of the offense, if any, solicited, encouraged, directed, aided or attempted to aid" Richert and/or Geri to commit the offense. We measure the sufficiency of the evidence against the charge given the jury in the application paragraph. *Jones v. State*, 815 S.W.2d 667, 669–70 (Tex.Crim.App. 1991).

■ In reviewing the sufficiency of the evidence in the light most favorable to the verdict or judgment, the appellate court is to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979); *Ransom v. State*, 789 S.W.2d 572, 577 (Tex. Crim.App.1989), *cert. denied*, 497 U.S. 1010, 110 S.Ct. 3255, 111 L.Ed.2d 765 (1990). This standard is applied to both direct and circumstantial evidence cases. *Chambers v. State*, 711 S.W.2d 240, 245 (Tex.Crim.App. 1986).

In conducting this review, the appellate court is not to re-evaluate the weight and credibility of the evidence, but act only to ensure the jury reached a rational decision. *Muniz v. State*, 851 S.W.2d 238, 246 (Tex. Crim.App.1993).

■ Richert was an accomplice as a matter of law because he was indicted for the same offense with which the appellant was charged based upon his participation in the theft from CWA. *Ex Parte Zepeda*, 819 S.W.2d 874, 876 (Tex.Crim.App.1991). An accomplice witness is someone who played an affirmative role in the commission of a crime for which the accused is being prosecuted. *Kunkle v. State*, 771 S.W.2d 435, 440 (Tex. Crim.App.1986). Accomplice witness testimony is suspect and cannot alone be the basis for conviction. *Walker v. State*, 615 S.W.2d 728, 731 (Tex.Crim.App.1981). To determine whether an accomplice's testimony is corroborated, we must eliminate all accomplice evidence from the record and determine whether inculpatory facts and circumstances in evidence tend to connect appellant to the offense. *Munoz*, 853 S.W.2d at 559. Corroborative evidence need not establish his guilt or directly link him to the offense; it is sufficient if it "tends to connect" him to the offense. *Id.* Furthermore, all of the facts and circumstances may be looked to for corroboration, and the corroborative evidence may be circumstantial or direct. *Brown v. State*, 672 S.W.2d 487, 488 (Tex.Crim.App. 1984). The accomplice testimony need not be corroborated on every element of the offense. *Warren v. State*, 514 S.W.2d 458, 463 (Tex.Crim.App.1974), *overruled on other grounds, Reed v. State*, 744 S.W.2d 112 (Tex. Crim.App.1988).

■ Richert's accomplice testimony established that he exercised control over CWA's money without their effective consent by depositing $5,000,000.00 of CWA's money in appellant's Jancik account at the Jersey Village Bank and by obtaining the $5,000,000.00 valid cashier's check with CWA's money, payable to appellant's Jancik company. Richert's testimony established his participation in the theft. This testimony was corroborated by Sam Dixon, the executive director, of CWA, who testified that $13,000,000.00 was taken from their accounts without authorization by Richert. The bank deposit in the Jancik account by Richert was corroborated by the bank officers's testimony (Patsy Smart and Susan Mathews). The $5,000,000.00 wire transfer to appellant's business was corroborated by Irma Blue at Richert's

bank; Irma Blue testified Richert gave her a handwritten note with Jancik's address and account number at the Jersey Village Bank and that Richert told her to send the money to that account. The note with the Jancik account information written on it was placed into the evidence. Richert obtained the $5,000,000.00 cashier's check in person from Irma Blue of the First Republic Bank. She testified that she did issue this cashier's check to Richert and he stated that the money was to purchase a business or a building. The five million dollar check was delivered to appellant by courier. Richert testified he sent the check by Hot Shot courier service which delivery was confirmed by Don Harris's testimony that appellant attempted to buy bonds and gold with it and the photocopy of it placed in evidence. Richert denied ever meeting appellant in person, did not know what he looked like, and denied signing the contract for the sale of appellant's Jancik business to him. We find the accomplice evidence showing the theft of the money by Richert and the delivery of the money to appellant by Richert was corroborated.

The actual participation in the offense by appellant was proven by non-accomplice testimony and exhibits. Appellant took the $5,000,000.00 check to Dean Witter and Don Harris, branch manager, and attempted to open an account. Mr. Harris made a photocopy of the check which was placed into evidence. The photocopy shows the purchaser of the check to be "Coastal Water *Association*" and appellant told Mr. Harris that he got the check and another $5,000,000.00 by wire transfer from Coastal Water Association. The check was endorsed by appellant as president of Jancik. There can be no doubt that appellant did receive and possess stolen money from this testimony. His explanation for his possession of this money raised a witness credibility issue for the jury. The jury, as the trier of the fact, is the sole judge of the credibility of the witnesses and may choose to believe or disbelieve all or any part of a witness's testimony. *Jones v. State*, 907 S.W.2d 850, 852 (Tex.App.—Houston [1st Dist.] 1995, pet. ref'd).

Appellant argues the $5,000,000.00 cashier's check was given to him by Richert for

the purchase of his concrete business for five hundred thousand dollars and he told the FBI that Richert instructed him to use the balance of $4,500,000.00 to buy bearer bonds for Richert. He argues the state did not disprove his defensive theory of an honest business mistake. He argues that the state failed to prove appellant's knowledge of the theft by Richert. We disagree.

In *Callahan v. State*, 502 S.W.2d 3 (Tex. Crim.App.1973), the court stated: "It should be remembered that a jury is not bound to accept an appellant's explanation of his possession of recently stolen property [citations omitted]." *Id.* at 6. Appellant in that case argued that the evidence was insufficient because his explanation made at the time of arrest for being behind a store with stolen whiskey under his car seat was never refuted by the state. The *Callahan* court further stated: "However, when the explanation is made at the time when the appellant's possession of recently stolen property is first challenged or questioned either directly or circumstantially, the necessity of showing the explanation is false is greater. This is particularly true where such explanation is reasonable and is sufficient to rebut the circumstance of possession of property recently stolen." *Id.* at 6–7. In *Callahan*, the trial court charged the jury to acquit the appellant unless they found his explanation unreasonable and inconsistent with innocence, or if reasonable and consistent, then disproved by the State. *Id.* at 7. The jury found the appellant guilty, impliedly rejecting his explanation. The court found:

It is not difficult to understand as to why the jury may have rejected the explanation as being unreasonable. It was too tall a tale to swallow. Appellant would have had the jury to believe that complete strangers approached him and his companion in the early morning hours and paid them $10.00 in advance to care for four half-gallons of whiskey until 8 p.m. the next day without an exchange of identities, etc.

*Id.* at 7.

In this case, appellant told the FBI he received the $5,000,000.00 check from Richert for the sale of his business to Richert and that Richert told him to buy bearer bonds with $4,500,000.00 excess over the $500,000.00 purchase price. The trial court instructed the jury on mistake of fact. The trial court's instruction stated, in pertinent part:

So, if you find from the evidence in this case that at the time the defendant appropriated the property, if he did, he acted under a mistake of fact, that is, a reasonable belief that the property was lawfully appropriated, or if you have a reasonable doubt thereof, you will acquit the defendant.

The jury rejected appellant's argument that he was an honest businessman who had been deceived by Richert and found him guilty of aiding Richert in the commission of the offense. In this case, the evidence "tends to connect" appellant to the offense. The nonaccomplice evidence established the following: (1) Richert stole the money from CWA without their effective consent; (2) Richert transferred the money to appellant's account and delivered the cashier's check for stolen money to appellant via courier; (3) appellant attempted to negotiate the $5,000,000.00 cashier's check at Dean Witter by buying bearer bonds and gold; (4) appellant told the FBI that he had drawn up the contract of sale for his concrete business to Richert and Richert had signed it. We find that reasonable jurors could conclude that the evidence, when viewed as a whole, tended to connect appellant to the offense committed. *Gill v. State*, 873 S.W.2d 45, 49 (Tex. Crim.App.1994). The evidence is sufficient to sustain appellant's conviction. We overrule appellant's points of error one and two.

In point of error three, appellant contends the trial court erred by overruling appellant's objection to prosecutor's jury argument alluding to the existence of evidence to be presented to other trials and not admitted in Griffin's trial. Specifically, appellant argues that the prosecutor's argument constituted improper representation that there was other evidence of guilt of the appellant and invited jury speculation on evidence not in the record. Appellant cites *Berryhill v. State*, 501 S.W.2d 86 (Tex.Crim.App.1973) as authority.

In *Berryhill*, the prosecutor had cross-examined the appellant and asked him hypo-

thetical questions that implied the existence of evidence of his guilt. The prosecutor had asked appellant to agree with various statements of fact concerning his activities on the night of an attempted robbery which would incriminate him. Appellant denied all the statements that were propounded to him as hypothetical questions. There was no evidence presented during the trial to show the activities of appellant referred to in the prosecutor's line of questioning. In final argument, the prosecutor referred to his cross-examination of appellant and stated: "Now, I can't tell you how I got the things that I was cross-examining him about ... but just stop and think a little bit about how his initial response was—." At this point, appellant's trial counsel objected to the prosecutor going outside the record. The court of criminal appeals found that the argument of the prosecutor implied the existence of incriminating evidence which could not be presented. *Id.* at 87. *Berryhill* does not apply to this case.

■ The purpose of closing argument is to facilitate the jury in properly analyzing the evidence presented at trial so that it may arrive at a just and reasonable conclusion based on the evidence alone. *Campbell v. State,* 610 S.W.2d 754, 756 (Tex.Crim.App. 1980). There are four permissible areas of jury argument: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to argument of opposing counsel; and (4) plea for law enforcement. *Bell v. State,* 724 S.W.2d 780, 802–03 (Tex.Crim.App.1986), *cert. denied,* 479 U.S. 1046, 107 S.Ct. 910, 93 L.Ed.2d 860 (1987).

■ The portion of the jury argument in question in this case is as follows:

PROSECUTOR: What I want to do is go over the charge and try to eliminate some of the side issues because there is always the possibility of being distracted by side issues. After all, you know, that's partly the name of the game here. You need to keep your eye on the ball. You are here to decide only one thing and that's whether Michael Griffin is guilty of this theft.

Remember, during jury selection we talked about situations where there would be other participants. And in this case you, obviously, got a lot of participants, maybe some

participants that we don't even know their names whether it's Chuck Wakefield, Steven Geri or Dinah Fulwiler. *You don't have to decide their guilt today.* Other evidence will be presented to another jury, in another court, on those decisions.

MR. MALLETT: Objection, Your Honor, to suggesting there are other cases. It's not evidence in this case. It's not relevant and it's not proper.

The prosecutor's argument was to urge the jury to consider only the evidence presented to them in the trial and not to worry about guilt of the other parties whose names were raised in the trial proceedings. We find this to be reasonable deduction from the evidence and was presented to the jury to assist them in analyzing the evidence before them by not considering other matters not before the court. We overrule appellant's point of error three.

■ In point of error four, appellant contends the trial court erred in overruling appellant's objection to the prosecutor's argument that appellant and Richert and/or Geri met and concocted a cover story. The argument, in pertinent part, was:

PROSECUTOR: No, this contract is not the work of a stupid man. This contract is the work of a desperate man. Michael Griffin, talking to Geri, talking to Richert, one or both, at some point the cover story is, if we have to use it, we are selling the business and we know that was over all— it's a reasonable inference.

MR. MALLETT: Object to her suggesting there was conversations about which there is no evidence. Object to it as being outside the record.

It would be reasonable to argue that the parties to this offense made some attempt to disguise their theft of ten million dollars by attempting to make the transaction appear bona fide by a sale by Griffin to Richert of Griffin's business. There was evidence that Richert delivered the stolen ten million dollars to Griffin and that Richert told bank officer Irma Blue the money was "to buy a business." There was evidence that Richert and Geri met at a cafe to discuss the theft.

There was evidence that Griffin had a contract to sell his business that appeared suspicious to the FBI. There was evidence that Griffin possessed the stolen ten million dollars. Counsel may draw inferences from the record that are "reasonable, fair, and legitimate." *Allridge v. State,* 762 S.W.2d 146, 156 (Tex.Crim.App.1988), *cert. denied,* 489 U.S. 1040, 109 S.Ct. 1176, 103 L.Ed.2d 238 (1989). *See also Hollins v. State,* 876 S.W.2d 923, 928 (Tex.App.—Houston [1st Dist.] 1994, no writ). We find that prosecutor's suggestion that the parties conspired to make this cover story is a reasonable deduction from the evidence. We overrule appellant's point of error four.

The judgment of the trial court is affirmed.