No. PD-1040-15

1040-15  ①

ORIGINAL   In The TX. Court Of
Criminal Appeals

Dennis Montrell Bendy
Petitioner

V.

The State Of Texas
Respondant

RECEIVED IN
COURT OF CRIMINAL APPEALS

SEP 25 2015

Abel Acosta, Clerk

FILED IN
COURT OF CRIMINAL APPEALS

SEP 25 2015

Abel Acosta, Clerk

Petition For Discretionary Review

In Appeal No. 12-14-00255-CR
from the
Court of Appeals
for the twelfth Judicial District
Tyler, TX. 75702

Dennis Bendy # 1951124
Telford Unit
3899 State Hwy 98
New Boston, TX. 75570

# TABEl OF Contents

Index of Authorities .................. Pg. iii
Statement Regarding oral Argument ........... Pg. 1
Statement of The Case ........... Pg. 2
Statement of Procedural History ......... Pg. 2
Ground For Review ............-- Pg. 3

" Ground For Review No. One ":

A, mis clarification of A local state statute of the court of Appeals mis-Implying the contents of the law.... In, A CLEAR DEFinition on what IS considered An "AFFirmAtive Act" that promotes the commission of the offense. That. the Accuse committed when It comes to the Specifics of An Accomplice where ...... the; Accomplice witness stamard can Apply under It's Analysis.

Argument Number One ........... Pgs. 4-6
Prayer For Relief .......... Pgs. 5-6
Certificate of Service .......... Pg. 6
Appendix .................... Pg. 7

# Index of Authorities

Beathard v. State 767 S.W. 2d 423, 428 (Tex. Crim. App. 1989) .......... Pg. 5

Douthitt v. State 931 S.W. 2d 244 (Tex. Crim. App. 1986) ....... Pg. 4

Gill v. State 873 S.W. 2d 45, 48 (Tex. Crim. App. 1994) ....... Pg. 5

Goff v. State 931 S.W. 2d 537, 544 (Tex. Crim. App. 1996) ....... Pg. 5

Munoz v. State 853 S.W. 2d 558, 559 (Tex. Crim. App. 1993) ....... Pg. 5

Smith v. State 332 S.W. 3d 439 (Tex. Crim. App. 2011) ....... Pg. 5

# Statutes, Codes, and Rules

Tex Penal Code Ann § 7.02 (A)(2) .......... Pg. 5

Tex Code Crim. Proc. Art. 38.14 .......... Pg. 2, 4 5

No. PD-1040-15

In The Tx. Court of
Criminal Appeals

Dennis Montrell Bendy
                    Petitioner

                    V.

The State of Texas
                    Respondent


## Petitioner's Petition For Discretionary Review

To The TX Court of Criminal Appeals:
   Petitioner, respectfully submits this Petition For Discretionary Review
and moves that this Honorable Court grant Review of this cause and
offers the following in support thereof:


## Statement Regarding Oral Argument

The, Petitioner request oral Argument in this case but ask that this court
substitute (Actual Argument) In the form; of A Brief so that Petitioner
can be Abel to Actually Argue due to him being pro se. Without,
the assistance of a Recongnizable Attorney who Is license by the Bar....
   because; such Argument may assist the court in Applying the facts to the issue
Raised. It, Is Suggested that oral Argument may help simplify the Facts....
   And; clarity the Issue.

1

## Statement OF THE CASE

The, Purpose for this Petition Is that there's An Important Question of state law in A WAY that conflicts .... with; the Applicable decisions of the Court of Criminal Appeals that infringes on Petitioner's Constitutional Rights under Federal Law." As, to what Is considered An Affirmative Act that Promotes the commission of the offense that the Accuse committed when It comes to the Specifics of, An Accomplice? So, that the Analysis of Article 38.14 TEX. CODE CRIM. Proc. can Be Implied In A Prosecution.

## Statement of Procedural History

In Cause No. 241-1515-13 Petitioner was charged with the offense of Murder. The, Petitioner was convicted of such offense on (August 28, 2014) and Appealed the conviction.
On, (July 22, 2015) the Twelfth Court of Appeals Affirmed the conviction No Motion For Rehearing was Filed. On 9-1-15 this Petition for Discretionary Review was timely forwarded to the Court of Appeals for filing Pursuant to Rule 9.2 (B) TX. R. Apl. Proc.

2

# Ground For Review

## I.

A∪ mis clarification of a local state statute of the court of Appeals mis-implying the contents of the law..... In: A clear definition on what is considered an "Affirmative Act" that promotes the commission of the offense. That, the Accuse committed when it comes to the specifics of an Accomplice..... where: the Accomplice Witness standard can apply under its analysis.

SEE: CLERKS R. At 194

XII Ref's At 103, 109

ID At 153-57

XIII Ref's R. At 9-11, 15. 20-21

XVI Ref's R. At 70-71, 74-77, 71-80, + 83

ID At 186-87

Appellant's BR 9-12

# Argument Number One

As, In the holdings of (Smith): Petitioner; contends that the following

    (A) Khiara Cain
    (B) Madeline Wallace
    (C) Rakheem Goldstein
    (D) Katyron Barrett
    (E) Stephan Whiteman

Are All "Accomplices" As they displayed An Affirmative Act ..... that; would promote the commission of the offense that the Accuse committed. Before, during; And After the crime occurred See 332 S.W.3d 439 (Tex. Crim. App. 2011) Smith V. State.

Khiara Cain - On, the night of the Shooting met Petitioner and other co-defendant Rakheem Goldstein at ..... A; Gas station for the Purposes of trading cars she was a Passenger. Who, knew or should have known A reasonable Person could Infer that "Suspicious Activity" was..... About; to take Place with knowing Each Individual was up to Something No Good. Where, No where In the Record would It suggest this was done ..... on; A Regular Basis that You would over look as of the Norm. She, was the Passenger of her friend / Roommate Madeline Wallace the (girl friend) ..... of; Rakheem Goldstein she wasn't Blind to the fact therefore this makes her Just As Guilty. As, A Party traveling In the get-a-way vehicle to And From the Drop off Destination See X RR: 154; XI RR23; XRR: 155, 168 & XRR: 162

Madeline Wallace - Is, the owner of the Get-a-way vehicle that was used During the Shooting As Being the ..... girl friend; of Petitioner's co-defendant Rakheem Goldstein she Also knew or should have known; A; reasonable Person could Infer that "Suspicious Activity" was About to take Place where No where ..... In; The Record would It suggest this was Done on A Regular Basis that You would over look As of the Norm. Her, Swapping cars with one of her Boyfriend's Friend that She didn't know without having Something to Say? Therefore, She wasn't Blind to the fact And this Makes her Just As Guilty As A Party ..... traveling; In the get-a-way vehicle to And From the Drop off Destination. See XI RR 18; XI RR 23; And XI RR 34, 38-39

Rakheem Goldstein - Was, one of the Shooters where the Record will show he Also was charged with Murder like ..... the; Petitioner And Became A Star State witness testifying Against Petitioner Putting the Pieces; together for the Prosecution. For, his own Personal gain minimizing his Role taking the heat And Pressure off of himself ..... When; he Arranged the Production of the get-a-way vehicle knowing there was Retaliation Discussed; Amongst; himself And the Petitioner from his testimony See XII RR 131, 140; XII RR 141, 160-65 thus making him An Accomplice.

Katyron Barrett - Was, the individual who disposed of the Murder weapons that he testified was given to him By the Petitioner ..... And; his co-defendant Rakheem Goldstein who knew or Should have known A Reasonable Person;

4

could infer that "subicious Activity" has taken Place if they were Asked to dispose of some guns. Therefore, he wasn't Blind to the fact; thus this makes him Just As guilty As A Party because he knew these guns was used for A "Criminal Act" and still chose to Dispose of them where too Avoid Prosecution he Assisted law Enforcement In locating them; once Assured. see RR 206 XIII; & XIII RR 210; XIV RR 24

Stephan Whiteman- Refered, to As Slick or Sticky Also helped dispose of the murder Weapons and gave Petitioner ...... And; Co-Defendant RakHeem Goldstein an (AK-47) he knew was going to Be used In A Criminal Act. Thus, making him An Accomplice that gave Assistance where he too was granted immunity ..... See XVI RR 75-76; XVI RR 72, 211; & XVI RR 69-70

All, of these individuals In their own Capacity Aided And or Assisted In the crime during; Before; Also After It occurred where their Culpable Mental state ..... Engaged, them Into taking Part of things Asked of them By the (Defendant's) they; knew wasn't of the Norm. That, would Enlighten them to the fact that Criminal Activity had transpired making .... them; Criminally Responsible As A Party under the law of Parties See Tex Penal Code Ann § 7.02 (A)(2) citing; Goff v. State 931 S.W. 2d 537, 544 (Tex. Crim. App. 1996) To, Necessarily knew About the Crime In Itself hand In hand does not Exactly need to Be known long As ..... It; can Be Proven that they knew Something wasn't Right and has taken Place of A Criminal Act which makes them An Accomplice. The, State Is using other Predecent to over Rule and mis-Imply the holdings of (Smith) that infringes on ..... Petitioner's; State And Federal Constitutional Rights where this court of Criminal Appeals; Intervention, and Determination As to what the Statutes of the holdings of (Smith) Actually implies would ..... Clarify; the Issue As to Exactly what Extent Is A Person considered An Accomplice? When, You can Prove Each individuals "Intent" of knowing that a Criminal Activity has transpired where ..... the; Analysis of Art. 38.14 Tex. Code Crim. Proc. (Testimony of Accomplices) implies; Requiring, the Witness testimony to Be corroborated but It's unclear As to how much Evidence Is Needed? Where, this gave the State's case some Lead way Not Necessairly Proving the (Burden) to It's maximum that ..... was; Prejudical to his Defense In Violating, his Substantive Due Process Rights where Petitioner's (trial) was Not "FAIR". See Douthit v. State 931 S.W. 2d 244 (Tex. Crim. App. 1996) The, Record will show there was No other Evidence from testimonies of other Witnesses to Determine ..... If; Petitioner was connected to the crime See XVII RR: 90; XI RR: 91-175; & XVII RR: 168-87 citing Munoz v. State 853 S.W. 2d 558, 559 (Tex. Crim. App. 1993) and Gill v. State 873 S.W. 2d 45, 48 (Tex. Crim. App. 1994) Even, If Petitioner was Present It's Insufficient to corroborate Accomplice testimony See Beathard v. State 767 S.W. 2d 423, 428 (TX. Crim. App. 1989). Actions; Displayed by Each Individual was An "Affirmative Act" that Promoted the commission of the Offense ...... thus; the 12th Court of Appeals mis-construes the contents of the holdings In (Smith); And, Affirmed Petitioner's conviction on mis clarification of the Statute Wherefore for the Reasons Stated ...... Petitioner; Prays that this court of Criminal Appeals reverse and Remand Back to the trial court. With, Proper Instruction of what constitute An Accomplice As to the Statutes of (Smith) for A New sentencing ...... Hearing; because over Ruling (Smith's) holding contributed to Petitioner's conviction Being Affirmed. on, this life Sentence he received ruling "Individuals" Involved As non-Accomplices where As with ..... A; Clear Definition from the Court of Criminal Appeals In It's context; As to what the Statute Actually Implies.

5

It's a Possible that there would BE A different outcome having No other Independent EVIDENCE ...... that could Per SAY the Petitioner was Actually Involved or not with No other Proof to bring About An conviction.

Respectfully Submitted,

/S/ Dennis Bendy 9-1-15
Dennis Bendy # 1951124
Telford unit
3899 State Hwy 98
New Boston, TX. 75570

## Certificate Of Service

The, undersigned Petitioner hereby certifies that a true and correct copy of the fore going Petition For Discretionary Review has Been ...... mailed to Abel Acosta Clerk Court of Criminal Appeals P.O. Box 12308 Capitol Station Austin, TX. 78711 by way of the United States mail Postage Pre Paid on this Day 9-1-15 .

/S/ Dennis Bendy 9-1-15
Petitioner

6



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

JULY 22, 2015

NO. 12-14-00255-CR

**DENNIS MONTRELL BENDY,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

---

Appeal from the 241st District Court

of Smith County, Texas (Tr.Ct.No. 241-1575-13)

---

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

James T. Worthen, Chief Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

# NO. 12-14-00255-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *DENNIS MONTRELL BENDY,*<br>*APPELLANT* | § | *APPEAL FROM THE 241ST* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,*<br>*APPELLEE* | § | *SMITH COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Dennis Montrell Bendy appeals his conviction for murder. In two issues, Appellant argues that the nonaccomplice evidence is insufficient to support the verdict and that the trial court erred in denying his requested jury instruction on the lesser included offense of manslaughter. We affirm.

## BACKGROUND

During the evening of July 13, 2013, Darrian Lee drove his friend Ke'Avier Wilson-Hurd to a local park in Tyler, Texas, to meet a group of women. Lee and Wilson-Hurd were gang members.[1] The park was located in a rival gang's territory, and they knew they might encounter trouble. Appellant is a member of the rival gang.[2] Wilson-Hurd and Lee walked to the park pavilion to determine whether any rival gang members were present. Wilson-Hurd was nervous and held a handgun in plain view. Once they determined that no members of the rival gang were present, they began socializing with the women. Brianna Young, the victim, was one of the women. She was at the park with her young son.

---

[1] Wilson-Hurd and Lee were in different gangs, but they were not rival gangs.

[2] Wilson-Hurd met Appellant earlier in the day and agreed to a truce. Lee was present at this meeting. Lee acknowledged that entering the territory of Appellant's gang would be a violation of that truce.

Members of the group noticed that a white Hyundai Elantra circled the park two or three times. On the final time, Lee noticed that someone exited the vehicle and then the vehicle circled around to their location. Almost immediately thereafter, shots were fired just outside the vehicle, and separately, next to a bathroom in the park near where the individual was let out of the vehicle. The shooters fired from opposing positions at Wilson-Hurd indicating that this was a coordinated ambush designed to cut off any escape routes. Wilson-Hurd ran towards Lee's vehicle, and the shooters tracked his movement as they continued firing. Young rushed to aid her son, who was in the area where the shots were fired. During that process, two bullets struck Young, and she died shortly thereafter.

None of the witnesses at the park could identify the shooters. However, investigating officers were led to Rakheem Goldstein, who ultimately admitted to having been involved in the shooting. Goldstein is in the same gang as Appellant, and Appellant and their gang had a feud with Wilson-Hurd and his gang. A few hours before the incident at the park, Appellant told Goldstein that Wilson-Hurd had just shot at Appellant and that Goldstein needed to meet with Appellant for retribution.[3] They learned that Wilson-Hurd was at the park. According to Goldstein, Appellant planned to switch vehicles with Goldstein's girlfriend so they would not be recognized. The pair brought a change of clothes to make it more difficult to identify them after the act was carried out. They also obtained a Glock handgun and an AK-47 assault rifle. Appellant drove the vehicle because Goldstein did not have a driver's license. The purpose of this was to minimize the chance of a vehicle search in the event they were detained by police. A search would have revealed their possession of the weapons. They also picked up fellow gang member Elisha Williams, who possessed a Ruger handgun.

Goldstein stated that as they drove to the park, Appellant devised a plan to let Williams out of the vehicle so that he could cut off Wilson-Hurd's escape route. Goldstein explained further that as they circled around the park, Appellant jumped out of the vehicle and began firing almost simultaneously with Williams, but from an opposing direction. Appellant returned to his vehicle and sped away.[4] Goldstein denied that he actively participated in the shooting.

---

[3] Wilson-Hurd's shooting at Appellant apparently took place on the same day after the truce meeting occurred.

[4] Appellant did not wait for Williams after the shooting occurred. Williams escaped by other means.

Goldstein eventually told officers that they went to Katyron Barrett's home to dispose of the Glock and the AK-47. Barrett claimed he declined to handle the weapons and told Tyiska Gray, a friend smoking marijuana at the house with him, to dispose of them. Barrett also claimed that Gray dumped the weapons in the woods. During the investigation, Barrett ultimately disclosed the location of the Glock and the AK-47, which were recovered by the authorities. Williams told Goldstein that he gave the Ruger to Stephan Whitemon, who turned the Ruger over to detectives. Ballistics testing on the firearms revealed that the two bullets that struck the victim matched the Ruger that the detectives recovered.[5]

Appellant pleaded "not guilty," and the case proceeded to a jury trial. The jury found him guilty of murder. After a punishment hearing, the trial court sentenced Appellant to imprisonment for life. This appeal followed.

## SUFFICIENCY OF THE CORROBORATIVE EVIDENCE

Appellant contends in his first issue that absent the accomplice witness evidence, the evidence is insufficient to support the verdict.

### Standard of Review and Applicable Law

A conviction cannot be secured upon the testimony of an accomplice unless that testimony is corroborated by other evidence tending to connect the defendant to the offense. TEX. CODE CRIM. PROC. ANN. art. 38.14 (West 2005); *Cocke v. State*, 201 S.W.3d 744, 747 (Tex. Crim. App. 2006). The corroboration is not sufficient if it merely shows the commission of the offense. TEX. CODE CRIM. PROC. ANN. art. 38.14. In analyzing a challenge to the sufficiency of corroborative evidence, we view the evidence in the light most favorable to the jury's verdict. *Brown v. State*, 270 S.W.3d 564, 567 (Tex. Crim. App. 2008).

To evaluate the sufficiency of corroboration evidence, we must eliminate all accomplice testimony from consideration and examine the remaining portions of the record to see if any evidence tends to connect the accused with the commission of the crime. *Castillo v. State*, 221 S.W.3d 689, 691 (Tex. Crim. App. 2007). The corroborating evidence need not be sufficient by itself to establish guilt. *Id.* The nonaccomplice evidence need not link appellant directly to the crime or establish guilt beyond a reasonable doubt. *McDuff v. State*, 939 S.W.2d 607, 613 (Tex.

---

[5] Goldstein admitted to possessing the AK-47 during the shooting, but said he never fired it. The investigating officers did not obtain any shell casings matching the AK-47.

3

Crim. App. 1997). And the accomplice testimony need not be corroborated on every element of the offense. *Griffin v. State*, 936 S.W.2d 353, 357 (Tex. App.—Houston [14th Dist.] 1996, pet. ref'd). There need only be other evidence tending to connect the defendant to the offense. *Id.* Corroboration is sufficient if there is any evidence that confirms a "mere detail" of the offense even if it does not independently establish the elements of that offense. *Lee v. State*, 29 S.W.3d 570, 577 (Tex. App.—Dallas 2000, no pet.). This may include "apparently insignificant circumstances." *Trevino v. State*, 991 S.W.2d 849, 852 (Tex. Crim. App. 1999).

When there are two permissible views of the evidence, one tending to connect the defendant to the offense and the other not tending to connect the defendant to the offense, appellate courts should defer to that view of the evidence chosen by the factfinder. *Simmons v. State*, 282 S.W.3d 504, 508 (Tex. Crim. App. 2009). The issue is not how an appellate court independently would assess the nonaccomplice evidence, but whether a rational factfinder could conclude that the nonaccomplice evidence tends to connect the accused to the offense. *Id.* at 509. Direct or circumstantial nonaccomplice evidence is sufficient corroboration if it shows that rational jurors could have found that it sufficiently tended to connect the accused to the offense. *Smith v. State*, 332 S.W.3d 425, 442 (Tex. Crim. App. 2011).

Each case must be judged on its own facts, and there is no set amount of nonaccomplice corroboration evidence that is required. *Malone v. State*, 253 S.W.3d 253, 257 (Tex. Crim. App. 2008). Proof that the accused was at or near the scene of the crime at or about the time of its commission, when coupled with other suspicious circumstances, may tend to connect the accused to the crime so as to furnish sufficient corroboration to support a conviction. *Id.* But the presence of a defendant at the scene of a crime, by itself, is insufficient to corroborate accomplice testimony. *Id.* Therefore, we consider the combined force of all of the nonaccomplice evidence that tends to connect the accused to the offense. *Smith*, 332 S.W.3d at 442.

## Discussion

Appellant argues that the nonaccomplice evidence is insufficient to connect him to the commission of the offense because it at most shows that he was in the area of the offense when it occurred, and that he may have been aware of the offense or with others involved in committing

4

the offense.[6] As part of his argument, Appellant contends that Madeline Wallace, Goldstein's girlfriend who supplied the vehicle, along with Kiara Cain, who was her passenger at the time of the switch, are accomplices. Appellant also contends that Barrett, who helped hide the Glock and AK-47 after the murder was committed, is an accomplice. We note that Appellant never contended at trial that these witnesses were accomplices. In any event, none of them are accomplices as a matter of law under the accomplice witness rule.

A person who allows the defendant to borrow a vehicle used in the commission of the offense is not an accomplice under the accomplice witness rule if she did not know that it would be used to commit the offense and did not otherwise participate or plan the crime. *See Sierra v. State*, 157 S.W.3d 52, 61 (Tex. App.—Fort Worth 2004), *aff'd*, 218 S.W.3d 85 (Tex. Crim. App. 2007). Wallace supplied the vehicle, but there is no evidence that she knew it would be used to commit the offense. In fact, the record shows that she believed Appellant and Goldstein would use the vehicle for temporary contract work and that Appellant and Goldstein preferred her fuel efficient vehicle over Appellant's large Lincoln.[7] The record also shows that it was not unusual for Goldstein to borrow Wallace's vehicle. As to Cain, the record reflects that she was Wallace's roommate at the time, and was simply along for the ride as a passenger in her vehicle. There is no evidence that either knew Appellant, Goldstein, and Williams would use the vehicle to commit a crime. Consequently, they are not accomplices.

With respect to Barrett, a witness is not an accomplice simply because of his knowledge of the offense, even if he does not report the offense or helps to conceal the offense. *See Smith*, 332 S.W.3d at 439. A witness's assistance in disposing of a weapon after a crime does not make him an accomplice witness without evidence of an affirmative act promoting the commission of the murder. *See Druery v. State*, 225 S.W.3d 491, 500 (Tex. Crim. App. 2007); *Cruz v. State*, 690 S.W.2d 246, 250–51 (Tex. Crim. App. 1985); *Wincott v. State*, 59 S.W.3d 691, 698 (Tex. App.–Austin 2001, pet. ref'd). Appellant and Goldstein eventually traveled to Barrett's home to

---

[6] Appellant points out that the DNA profiles obtained from the firearms specifically exclude him, making his connection to the offense even more tenuous. Specifically, Kimberlee Mack, the forensic scientist who tested the guns, obtained a partial DNA profile from the grip of the Ruger, which excluded Williams. She found three DNA partial profiles on the Glock, and those excluded Appellant. However, we view the corroborative evidence in the light most favorable to the verdict. *Brown*, 270 S.W.3d at 567. Mack stated that the shooters could have been wearing gloves when handling the firearms or they could have wiped them prior to relinquishing possession of the weapons to third parties for disposal. She also noted that there was no DNA profile on the trigger of the Ruger or the Glock.

[7] Goldstein did not own a vehicle or have a valid driver's license.

dispose of the weapons. The evidence shows at most that Barrett learned of the crime for the first time after the fact and helped dispose of the weapons. He had no affirmative role in planning or participating in the commission of the offense. Therefore, he is not an accomplice under the accomplice witness rule.

Turning to the nonaccomplice witness testimony, we conclude that the evidence tends to connect Appellant to the commission of the offense. Cain and Wallace testified that they switched vehicles with Appellant and Goldstein. The investigating detectives learned the location of the car switch from them and obtained a video recording confirming that Appellant and Goldstein obtained the white Hyundai Elantra shortly before the murder was committed. Lee and the group of women at the park confirmed at trial that they observed a white or light colored Hyundai Elantra circled the park two or three times. Lee testified that he saw a person exit the vehicle shortly before the shooting, and he knew the person who exited the vehicle was the shooter close to the bathroom.

The detectives obtained Appellant's cellular phone records and determined he was at or near the location of the murder at the time it occurred. *See Brown v. State*, 672 S.W.2d 487, 489 (Tex. Crim. App. 1984) ("Proof that the accused was at or near the scene of the crime at or about the time of its commission, when coupled with other suspicious circumstances, may tend to connect the accused to the crime so as to furnish sufficient corroboration to support a conviction."). The detectives were also able to speak with Barrett, who confirmed that Appellant arrived at his house in the white Elantra and asked him to dispose of the weapons. *See Roys v. State*, 416 S.W.3d 229, 235 (Tex. App.—Amarillo 2013, pet. ref'd) (evidence that defendant gave weapons used in committing the offense to a third party for disposal tends to connect him with the murder). Barrett also led the detectives to the Glock and the AK-47. Separately, the detectives obtained the Ruger. Ballistics testing on the firearms showed that the Glock, fired by Appellant, was fired at least eight times and the Ruger, fired by Williams, was fired at least eleven times. *See Cockrum v. State*, 758 S.W.2d 577, 582 (Tex. Crim. App. 1988) ("Proof that connects an accused to a weapon used in an offense is proper corroborative evidence."). The shot that killed Young came from the Ruger. We conclude that the nonaccomplice evidence sufficiently tends to connect Appellant to Young's murder.

Appellant's first issue is overruled.

6

## JURY INSTRUCTION

In his second issue, Appellant argues that the trial court erred in denying his requested jury instruction on the lesser included offense of manslaughter.

### Standard of Review

We apply a two-step process to determine whether a defendant was entitled to an instruction on a lesser offense. *Cavazos v. State*, 382 S.W.3d 377, 382 (Tex. Crim. App. 2012). First, we determine whether the offense qualifies as a "lesser included offense" under Texas Code of Criminal Procedure Article 37.09. *See* TEX. CODE CRIM. PROC. ANN. art. 37.09 (West 2006); *Sweed v. State*, 351 S.W.3d 63, 68 (Tex. Crim. App. 2011). This is a question of law. *Hall v. State*, 225 S.W.3d 524, 535 (Tex. Crim. App. 2007). Next, we determine whether there is some evidence that would have permitted the jury to rationally find that, if the defendant was guilty, he was guilty only of the lesser offense. *Id.* at 536.

Although the threshold showing for an instruction on a lesser included offense is low— more than a scintilla of evidence—the evidence must establish that the lesser included offense is a valid and rational alternative to the charged offense. *Hall*, 225 S.W.3d at 536. "[I]t is not enough that the jury may disbelieve crucial evidence pertaining to the greater offense; there must be some evidence directly germane to a lesser included offense for the factfinder to consider before an instruction on a lesser included offense is warranted." *Bignall v. State*, 887 S.W.2d 21, 24 (Tex. Crim. App. 1994).

### Applicable Law

A person commits murder, in pertinent part, if he

(1) intentionally or knowingly causes the death of an individual; [or]

(2) commits or attempts to commit a felony, other than manslaughter, and in the course of and in furtherance of the commission or attempt, or in immediate flight from the commission or attempt, he commits or attempts to commit an act clearly dangerous to human life that causes the death of an individual.

TEX. PENAL CODE ANN. § 19.02 (b)(1), (3) (West 2011).

A person acts "intentionally" with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result. *Id.* § 6.03(a) (West 2011). A person acts "knowingly" with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that

the circumstances exist. *Id.* § 6.03(b). A person acts knowingly with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result. *Id.*

A person commits manslaughter if he recklessly causes the death of an individual. *Id.* § 19.04(a) (West 2011). A person acts "recklessly" if with respect to circumstances surrounding his conduct or the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. *Id.* § 6.03(c). The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint. *Id.*

### Discussion

The parties correctly agree that manslaughter is a lesser-included offense of murder as charged in this case. *See Cavazos,* 382 S.W.3d at 384; *Moore v. State,* 969 S.W.2d 4, 9 (Tex. Crim. App. 1998). Thus, the first step of the two-step test is satisfied.

Appellant contends Goldstein's testimony demonstrates that a rational jury could have found him guilty only of manslaughter. Specifically, Appellant argues the record shows only that he had a desire to retaliate, and not necessarily to kill, Wilson-Hurd. He relies on Goldstein's statements that Goldstein did not believe an actual shooting would take place and that he did not believe there was a specific plan to kill Wilson-Hurd. As they arrived at the park, Goldstein discussed with Appellant the danger to bystanders of shooting in a crowded area such as the park. In response, Appellant assured Goldstein, "Man, I got aim. You know, I got this." This evidence, Appellant argues, shows that he was aware of a substantial risk to others, that he chose to ignore it, and consequently the jury could rationally find that he was guilty only of manslaughter.

However, this evidence shows that Appellant actually intended to shoot Wilson-Hurd. *See Patterson v. State,* 950 S.W.2d 196, 200-01 (Tex. App.—Dallas 1997, pet. ref'd) (holding that shooting at vehicle occupied by rival gang members might allow jury to find involuntary manslaughter, but evidence that defendant chased victim's car and shot at it, with other testimony that he intended to "do" them, failed to show he was not guilty of murder, and lesser included offense manslaughter instruction not warranted). The fact that the bullets hit an unintended victim does not entitle Appellant to a charge on a lesser included offense, because his intent with regard to his intended victim transfers to the actual victim. *See* TEX. PENAL CODE

8

ANN. § 6.04(b) (West 2011); *see also Forest v. State*, 989 S.W.2d 365, 368 (Tex. Crim. App. 1999); *Harrell v. State*, 659 S.W.2d 825, 827 (Tex. Crim. App. 1983).

Moreover, the evidence at trial shows that Appellant (1) heard K.J. was at the park, (2) planned to "get that n----r" according to Goldstein, (3) exchanged cars to avoid detection, (4) drove around the park a few times and crafted a plan for Williams to come from another direction to ambush Wilson-Hurd, (5) jumped out of the car and shot at least eight times into the crowd, (6) disposed of the guns, and (7) exchanged vehicles again to avoid being identified. At the time Appellant and Williams fired into the crowded group, their shots followed Wilson-Hurd as he ran to Lee's vehicle. Unfortunately, Young was killed in the process.

In sum, the evidence shows that the crime was intentionally planned by Appellant, and there is no evidence in the record that would have permitted the jury to rationally find that if Appellant was guilty, he was guilty only of manslaughter. *See Cavazos*, 382 S.W.3d at 385 (no evidence directly germane to recklessness, as pulling out a gun, pointing it at someone, pulling the trigger twice, fleeing the scene, and later telling a friend "I didn't mean to shoot anyone" does not rationally support an inference that Appellant acted recklessly at the moment he fired the shots); *Robinson v. State*, 945 S.W.2d 336, 342-43 (Tex. App.—Austin 1997, pet. ref'd) (holding that shooting between the defendant and intended victim earlier in the day, the defendant's "haste to procure an automatic rifle," and his "intentional firing" at an apartment negated a finding of manslaughter and supported the trial court's denial of that instruction in the jury charge).

Furthermore, the evidence mandates that the jury could find only that Appellant, at a minimum, knowingly caused Young's death when he fired the weapon. When a defendant uses a deadly weapon in a deadly manner by firing it into a crowd, he knows that death or serious bodily injury that could result in death could occur. *See Medina v. State*, 7 S.W.3d 633, 639 (Tex. Crim. App. 1999) (holding that a defendant was not entitled to a lesser included instruction on manslaughter where evidence showed that defendant fired into a crowd without the intent to kill any particular person); *Vuong v. State*, 830 S.W.2d 929, 934 (Tex. Crim. App. 1992) (holding that "[a]ppellant's use of a deadly weapon in a tavern filled with patrons supplies ample evidence for a rational jury to conclude beyond a reasonable doubt that Appellant had the requisite intent to kill"); *Godsey v. State*, 719 S.W.2d 578, 580-81 (Tex. Crim. App. 1986); *Rojas v. State*, 171 S.W.3d 442, 447 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd) ("The

evidence supports the inference that appellant knew his shooting the gun in the general direction of a group of people including the four-year-old victim was reasonably certain to result in a death.").

Since the evidence does not show that Appellant is guilty *only* of consciously disregarding a known substantial and unjustifiable risk that serious bodily injury or death would occur, he was not entitled to an instruction on the lesser included offense of involuntary manslaughter. Accordingly, the trial court did not err in refusing to instruct the jury on the lesser included offense of manslaughter.

Appellant's second issue is overruled.

## DISPOSITION

Having overruled Appellant's first and second issues, we *affirm* the judgment of the trial court.

**JAMES T. WORTHEN**
Chief Justice

Opinion delivered July 22, 2015.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(DO NOT PUBLISH)

10