

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-18-00099-CR

ERIC TURNER, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 202nd District Court
Bowie County, Texas
Trial Court No. 17F0621-202

Before Morriss, C.J., Burgess and Moseley,* JJ.
Opinion by Chief Justice Morriss
Dissenting Opinion by Justice Burgess

_____
*Bailey C. Moseley, Justice, Retired, Sitting by Assignment

# OPINION

Eric Turner was found guilty of aggravated robbery with a deadly weapon and was sentenced to thirty years' incarceration following a jury trial at which Turner's co-defendants, Katelin Jordan and Asa Mannette, identified Turner as the individual who committed the robbery.

On appeal, Turner complains that the evidence is legally insufficient because the State did not adequately corroborate the testimony of his co-defendants as required by Article 38.14 of the Texas Code of Criminal Procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 38.14 (West 2005). Because we find that the State sufficiently corroborated the accomplice-witness testimony, we affirm the trial court's judgment.

## I. Background

On June 10, 2017, Valerie Thompson and her husband, Michael Thompson, received a Facebook message from Mannette to purchase marihuana from the Thompsons. The Thompsons made arrangements to meet Mannette and Jordan at Mannette's house in New Boston. When the Thompsons arrived at Mannette's house, Jordan and Valerie met in the backyard to consummate the purchase while Michael and Mannette remained in the front yard. As Jordan was examining the marihuana, a man ran up and pointed a gun in Valerie's face.

The gun-wielding man, described by Valerie as a short, "stocky-ish" black man who was wearing a mask, threatened to shoot Valerie if she said anything. When Valerie screamed, the man shot the ground next to her feet. Valerie testified that there was a second shot, but she could not recall exactly when that happened. The man never pointed the gun at Jordan and did not shoot in

2

her direction. His actions were only directed at Valerie. Valerie ran from the backyard to the neighbor's house without retrieving her marihuana from Jordan.

The neighbor—now aware of the disturbance—called the police. Valerie, although quite "shook up," gave a short statement to the police in which she identified Mannette. She could not, however, identify the man who threatened her with a gun or the others involved in the robbery.

When Valerie was asked at trial if she could identify Turner—the man seated at the defense counsel table—as the gunman, she stated that she could not identify him "from the face." Turner was then asked to stand next to the counsel table. At that point, Valerie testified that Turner matched the physical description of the man who threatened her. She testified that Turner is a black male who is short and stocky—as was the man who threatened her with the gun. Valerie cried as she gave her testimony, explaining, "[H]e just scares me." Nevertheless, Valerie was unable to positively identify Turner as the man who threatened her with a gun. Michael's version of these events and the description of the gunman was much the same.

According to Michael, he and Mannette waited in front of the house while the sale was supposed to be taking place. When Michael heard the gunshot, he ran to the back of the house where he saw Jordan and Dakota Firth—a white male—jump in the ravine. Michael gave chase and was able to catch Jordan. At that point, "a short, stocky black man in a red, white and blue mask"[1] emerged from the bushes and started circling Michael with a gun pointed at his leg. The man fired three or four shots at the ground by Michael's foot. Michael asked the gunman if he had

_____

[1]Michael described the gunman's mask as resembling an American flag.

3

hurt Valerie. The gunman responded that he had not and that Michael should go check on her. Jordan, Mannette, Firth, and the gunman then took off running. The gunman was the only individual wearing a mask. Consequently, Michael's identification of the gunman was based on his body type and the mask he wore during the robbery.

At trial, Michael was able to view Turner as Turner stood at the counsel table. He testified that Turner had the same short, stocky body type as the individual with the gun. In earlier statements to the police, Michael only described the gunman as a black man, as he was never asked for a full description. He was also shaken up by the entire incident and had not previously seen or met any of the individuals he encountered on the day of the robbery.

Later, Michael and Valerie researched Facebook, hoping to discover the identities of the other individuals involved in the robbery. Utilizing this tool, they were able to identify Jordan and Firth as two of the individuals involved in the incident. Valerie also located Turner on Facebook— a person who matched the description of the individual who fired the weapon. She subsequently questioned law enforcement about Turner's involvement in the robbery. Jordan's and Mannette's trial testimony, however, established that Turner was the gunman.

Jordan testified that she had pled guilty to the June 10, 2017, aggravated robbery involving Valerie and Michael. According to Jordan, she met with Turner, Firth, and Mannette in her apartment on June 10 to set up a drug buy that culminated in aggravated robbery.[2] The plan was to meet Michael and Valerie and to rob Valerie of the marihuana.

---

[2]Jordan testified that she, Mannette, and Firth had been friends for a few years at the time of the robbery and that Turner was her boyfriend. Jordan and Turner had been dating approximately six months when the robbery happened.

4

The four traveled in Turner's car from Jordan's apartment to Mannette's parents' house, where the marihuana purchase was to take place. Turner was carrying a black handgun and Mannette had a BB gun. Turner, who was driving the car, parked some distance away from the house, so nobody would see the getaway car. Jordan and Mannette then walked to his parents' house. Jordan proceeded to speak with Valerie behind the house. According to the plan, Jordan was supposed to take the marihuana from Valerie and run off with it.

Before Jordan was able to "run off" with the marihuana, Turner emerged from the bushes wearing a red, white, and blue mask[3] and carrying a gun. Turner told Valerie that if she screamed, he would shoot her. When she screamed, Turner shot twice at Valerie's feet. Jordan and Turner then ran through a field in the direction of the car. Michael chased the two and was able to catch Jordan, at which time Turner shot at Michael. She testified that Firth was not carrying a gun and that Turner was the only black male with Jordan. After Turner shot at Michael, the four escaped in Turner's car and returned to Jordan's apartment.[4]

Like Jordan, Mannette testified that he pled guilty to aggravated robbery and was a co-defendant in the case. His testimony mirrored that of Jordan in most key areas. He testified of the meeting in Jordan's apartment with Jordan, Firth, and Turner, the plan to steal the marihuana, Turner firing a pistol at Valerie's feet while wearing a red, white, and blue mask, and later firing

---

[3]Turner was wearing the mask earlier at Jordan's apartment.

[4]Callan Neff, an officer with the New Boston Police Department, responded to the call of shots fired in the vicinity of North Miller Street. Neff located two nine-millimeter shell casings behind the Mannette house.

the pistol at Michael's feet before he, Jordan, Firth, and Turner sped away in Turner's car. He did

not know what Turner did with the gun and the mask, as neither was discovered by the police.[5]

Finally, New Boston police officer Brandon Harbison testified that he assisted in a traffic

stop approximately two to three weeks prior to the robbery. During that traffic stop, Officer

Harbison observed Turner and Jordan together.

## II.     The Accomplice-Witness Testimony Was Sufficiently Corroborated

Turner maintains that the accomplice-witness testimony of Jordan and Mannette was not

sufficiently corroborated to satisfy the "accomplice-witness rule" found in Article 38.14 of the

Texas Code of Criminal Procedure.[6]  Article 38.14 states, "A conviction cannot be had upon the

testimony of an accomplice unless corroborated by other evidence tending to connect the defendant

with the offense committed; and the corroboration is not sufficient if it merely shows the

commission of the offense." TEX. CODE CRIM. PROC. ANN. art. 38.14.

When evaluating the sufficiency of corroborating evidence under Article 38.14, we

"eliminate the accomplice testimony from consideration and then examine the remaining portions

of the record to see if there is any evidence that tends to connect the accused with the commission

of the crime." *Solomon v. State*, 49 S.W.3d 356, 361 (Tex. Crim. App. 2001). The tends-to-

---

[5]Police recovered a gun from an apartment occupied by Turner's uncle. Forensic testing revealed that that gun was not the gun used by Turner in the robbery. Jordan testified that she did not know what Turner did with the gun used in the robbery.

[6]"An accomplice is someone who participates with the defendant before, during, or after the commission of a crime and acts with the required culpable mental state." *Brown v. State*, 270 S.W.3d 564, 567 (Tex. Crim. App. 2008) (citing *Paredes v. State*, 129 S.W.3d 530, 536 (Tex. Crim. App. 2004)). It is undisputed that Jordan and Mannette participated in the aggravated robbery and pled guilty to that offense. Consequently, both are accomplices as a matter of law. *See Paredes v. State*, 129 S.W.3d 530, 536 (Tex. Crim. App. 2004) ("An accomplice as a matter of law is one who is susceptible to prosecution for the offense with which the accused is charged or a lesser included offense.").

connect standard does not present a high threshold as the "evidence need not prove the defendant's guilt beyond a reasonable doubt by itself." *Id*.; *see Cantelon v. State*, 85 S.W.3d 457, 461 (Tex. App.—Austin 2002, no pet.). "Rather, the evidence must simply link the accused in some way to the commission of the crime." *Malone v. State*, 253 S.W.3d 253, 257 (Tex. Crim. App. 2008).

Such evidence "is sufficient corroboration if it shows that rational jurors could have found that it sufficiently tended to connect the accused to the offense." *Smith v. State*, 332 S.W.3d 425, 442 (Tex. Crim. App. 2011) (citing *Simmons v. State*, 282 S.W.3d 504, 508 (Tex. Crim. App. 2009)). According to the Texas Court of Criminal Appeals,

> No precise rule can be formulated as to the amount of evidence required to corroborate. The non-accomplice evidence does not need to be in itself sufficient to establish guilt beyond a reasonable doubt. Nor must the non-accomplice evidence directly link the accused to the commission of the offense. While the accused's mere presence in the company of the accomplice before, during, and after the commission of the offense is insufficient by itself to corroborate accomplice testimony, evidence of such presence, coupled with other suspicious circumstances, may tend to connect the accused to the offense. Even apparently insignificant incriminating circumstances may sometimes afford satisfactory evidence of corroboration.

*Dowhitt v. State*, 931 S.W.2d 244, 249 (Tex. Crim. App. 1996) (citations omitted). In determining whether the non-accomplice evidence tends to connect the defendant to the commission of the offense, "we view the evidence in the light most favorable to the jury's verdict." *Brown*, 270 S.W.3d at 567. When viewed in that light, we find that the corroborating evidence is sufficient to connect Turner to the robbery.

Viewed in the light most favorable to the jury verdict, the non-accomplice evidence in this case established that (1) four people committed the aggravated robbery on June 10, 2017, (2) only one of the participants in the robbery was carrying a firearm, (3) the gunman fired shots at Valerie's

7

and Michael's feet, (4) the gunman did not threaten Jordan, who was holding the marihuana at the time of the robbery, (5) Turner and Jordan were seen together by a police officer a few weeks before the robbery, (6) Valerie and Michael both described the gunman as a short, stocky, black man, (7) only one of the participants in the robbery was a black man, (8) Valerie and Michael both testified at trial that Turner matched the physical description of the gunman, (9) Valerie was visibly shaken when she faced Turner at trial to identify his physical characteristics, and (10) Valerie identified Turner on Facebook as the person she believed to be the gunman prior to the time of trial.

As the Texas Court of Criminal Appeals has explained, the tends-to-connect standard does not present a high threshold. *See Solomon*, 49 S.W.3d at 361. Here, the non-accomplice evidence tends to connect Turner with the offense. Although Valerie and Michael could not positively identify Turner as the gunman because he was wearing a mask, both testified that Turner looked like the gunman based on his build and skin color. Michael further identified Turner based on his height. *See Cooper v. State*, 631 S.W.2d 508, 510 (Tex. Crim. App. 1982) (holding that a less-than-positive identification may be sufficient to corroborate accomplice-witness testimony), *overruled on other grounds by Bell v. State*, 994 S.W.2d 173, 175 (Tex. Crim. App. 1999); *Griffin v. State*, 486 S.W.2d 948, 950 (Tex. Crim. App. 1972) (same); *In re C.M.G.*, 905 S.W.2d 56, 59 (Tex. App.—Austin 1995, no pet.) (less-than-positive identification sufficient to corroborate accomplice- witness testimony, even without additional corroborating evidence). Even before she confronted Turner at trial, Valerie had identified Turner as the man she believed to be the gunman based on her Facebook research. In addition, Harbison's non-accomplice testimony revealed that

8

Jordan and Turner knew each other prior to the robbery, and Valerie's non-accomplice testimony revealed that the gunman never threatened Jordan during the robbery. Finally, Valerie's emotional reaction to seeing Turner at trial could have been interpreted by the jury as supportive of the identification testimony.

We conclude that, based on the totality of the non-accomplice testimony, a rational juror could find that this evidence tends to connect Turner to the offense. *See Reed v. State*, 744 S.W.2d 112, 126 (Tex. Crim. App. 1988) ("combined cumulative weight of the incriminating evidence furnished by the non-accomplice witnesses which tends to connect the accused with the commission of the offense supplies the test"). The evidence is, therefore, sufficient to support Turner's conviction.[7]

---

[7]The dissent compellingly argues that the evidence supporting corroboration in this case is thin. However, we would note that the issue of whether the evidence is sufficient to prove a defendant's guilt beyond a reasonable doubt is different from the issue of whether the evidence is sufficient to corroborate accomplice testimony. In determining whether the evidence is sufficient to support the conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 320 (1979); *see also Brooks v. State*, 323 S.W.3d 893, 913 (Tex. Crim. App. 2010) (plurality op.). On the other hand, as noted above, when deciding whether the evidence is sufficient to support corroboration, we "eliminate the accomplice testimony from consideration and then examine the remaining portions of the record to see if there is any evidence that tends to connect the accused with the commission of the crime." *Solomon*, 49 S.W.3d at 361.

We concede that Valerie's and Michael's testimony would not be sufficient—by itself—to establish that "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 320; *Brooks*, 323 S.W.3d at 913. But the State does not rely solely on Valerie's and Michael's testimony. Rather, the State also relies on Jordan's testimony that Turner was the masked gunman. Jordan's testimony is sufficient to convict under the federal *Jackson* standard, and if this case were in federal court, we would stop there.

Of course, under Texas law, the State must also corroborate Jordan's testimony by other evidence tending to connect Turner to the offense. But, corroboration is not a constitutional requirement under either the Texas or Federal Constitutions; rather, it is a statutory standard under Texas law. To be sure, it is an important standard, and—as the dissent observes—the Legislature adopted this additional proof requirement to ameliorate the inherent incentive accomplice witnesses have to lie. *See infra* p. 10 (citing *Zamora v. State*, 411 S.W.3d 504, 509–10 (Tex. Crim. App. 2013)). Yet, the Legislature did not make this an onerous standard. Rather, as noted, the State need only show that the corroborating evidence "tends to connect" Turner to the offense. *Solomon*, 49 S.W.3d at 361. It is not required to prove corroboration beyond a reasonable doubt.

As noted above, we believe that Valerie's and Michael's testimony "tends to connect" Turner to the offense for purposes of the accomplice-witness rule even though it would not be sufficient to prove Turner's guilt beyond a

## III.    Conclusion

We affirm the trial court's judgment.


> Josh R. Morriss, III
> Chief Justice


DISSENTING OPINION

I respectfully dissent.  The majority affirms Turner's conviction because it concludes there is independent evidence that "tends to connect" Turner to the offense.  Specifically, the majority identifies (1) the testimony of Officer Harbison that approximately two or three weeks before the robbery, he was present at a traffic stop involving Turner and Jordan;  (2)  Valerie and Thompson both described the gunman as a short, stocky, black man; (3) only one of the participants in the robbery was a black man; (4) Valerie and Thompson both testified at trial that Turner matched the physical description of the gunman in that he was a short, stocky, black man, and (5) Valerie identified Turner on Facebook as the person she believed to be the gunman prior to the time of trial.  I would hold that the totality of this testimony, even when viewed in the light most favorable to the jury verdict, is insufficient because it does not tend to connect Turner to the robbery.

---

reasonable doubt by itself.   Because Valerie's and Michael's testimony is sufficient to corroborate Jordan's testimony, and because Jordan's testimony is sufficient to prove Turner's guilt beyond a reasonable doubt, we find that the evidence is sufficient to support Turner's conviction under the *Jackson/Brooks* standard.

The "accomplice witness rule" requires that "[a] conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense." TEX. CODE CRIM. PROC. ANN. art. 38.14. This Rule "reflects a legislative determination that accomplice testimony implicating another person should be viewed with a measure of caution, because accomplices often have incentives to lie, such as to avoid punishment or shift blame to another person." *Zamora v. State*, 411 S.W.3d 504, 509–10 (Tex. Crim. App. 2013) (quoting *Blake v. State*, 971 S.W.2d 451, 454 (Tex. Crim. App. 1998)). "The underlying rationale is that the accomplice is a corrupt source who may well have improper incentives when testifying against the accused—e.g., to redirect blame or to gain favor with the state in exchange for a reduced punishment."[8] *Gaston v. State*, 324 S.W.3d 905, 909 (Tex. App.— Houston [14th Dist.] 2010, pet. ref'd) (citing *Wincott v. State*, 59 S.W.3d 691, 698 (Tex. App.— Austin 2001, pet. ref'd)). And, although the tends-to-connect standard does not present a high threshold as it need not prove the defendant's guilt beyond a reasonable doubt, *Solomon v. State*, 49 S.W.3d 356, 361 (Tex. Crim. App. 2001), it must do more than "point the finger of suspicion" at the defendant. *Paulus v. State*, 633 S.W.2d 827, 844 (Tex. Crim. App. 1981). Moreover, the non-accomplice evidence must point toward the defendant's commission of the offense, rather than merely corroborating the accomplice testimony on extraneous matters. *Munoz v. State*, 853 S.W.2d 558, 563 (Tex. Crim. App. 1993).

---

[8]Both Mannette and Jordan testified that they had pled guilty to the aggravated robbery pursuant to plea agreements under which they would receive ten-year sentences. The plea agreements were contingent on their testifying at Turner's trial.

The Texas Court of Criminal Appeals has recognized that evidence placing a defendant in the company of the accomplice "before, during, and after the commission of the offense," when coupled "with other suspicious circumstances, may tend to connect the accused to the offense." *Dowhitt v. State*, 931 S.W.2d 244, 249 (Tex. Crim. App. 1996); *see Rhymes v. State*, 536 S.W.3d 85, 93 (Tex. App.—Texarkana 2017, pet. ref'd) (evidence that defendant was in the company of an accomplice at or near time or place of the offense is proper corroborating evidence). Here, however, the majority relies on evidence that Jordan and Turner were together at a traffic stop two or three weeks before the robbery. This type of evidence, attenuated in time and locale, has never been recognized as the type of evidence which would tend to connect the accused to a crime. At most, this evidence merely indicates that Jordan and Turner were acquainted before the robbery; it does not tend to connect Turner to the robbery.

Neither Valerie nor Thompson could identify Turner as the gunman because the gunman was wearing a mask. Yet, the majority relies on their testimony that Turner was black, as was the gunman, and that he was short and stocky, as was the gunman, as tending to connect Turner to the robbery. This vague physical description is far too general to connect Turner to the robbery. As in *Gaston*, this evidence merely points the finger of suspicion at Turner.

In *Gaston*, our sister court determined that the non-accomplice testimony was insufficient to connect the defendant to a robbery of a convenience store. *Gaston*, 324 S.W.3d at 909–10. There, a non-accomplice witness testified that she saw the defendant and the accomplice together on the afternoon of the robbery, that she loaned them her car, and that, when they returned with the car after an unspecified length of time, the defendant had a "wad" of five-dollar bills. *Id*. at

12

909. Even though the defendant was in the company of the accomplice near the time of the offense, our sister court recognized that "guilt by association" will not alone satisfy Article 38.14. *Id*. Further, the non-accomplice testimony did not indicate the purpose, destination, or duration of the defendant's trip. *Id*. The fact that the defendant paid the witness for the use of her car from a "wad" of money likewise did not tend to connect him to the robbery; there was no evidence to reflect whether the defendant had any money before borrowing the car, or whether he possessed it after the robbery's commission. *Id*.

The State also relied on the convenience store surveillance footage of the robbery as tending to connect the appellant to the robbery. Because the video depicted a masked offender, fully concealed under black clothing, it did not reveal any distinguishing marks or characteristics of the offender. *Id*. at 911. The court found that the "general silhouette" in the video was insufficient to connect the appellant to the robbery. *Id*.

Finally, the State relied on non-accomplice testimony from a witness who claimed she purchased a gun from the appellant that resembled the same gun used in a different convenience store robbery. The court recognized that, while this evidence might tend to connect the appellant to the robbery of a different convenience store, it did not tend to connect him to the robbery of the convenience store in the case before the court. *Id*.

The non-accomplice evidence in this case is even weaker than that presented in *Gaston*. Valerie's and Thompson's testimony that they identified Turner on Facebook as the gunman does nothing to strengthen the corroborative force of the evidence regarding the gunman's general physical description and Turner's presence with Jordan weeks before the robbery. The entirety of

13

Valerie's testimony in this regard was that, when she gave the police a second statement, she went "into more detail about the information that [she] either knew or discovered through talking with [her] husband and looking on Facebook." Thompson's testimony in this regard was:

Q      All right. Did y'all go back and do Facebook searches to see if --

A      Yeah, Valerie did a lot of research. She was trying to figure out who everyone was.

Q      All right. And did you locate names and faces on Facebook?

A      We did.

Q      All right. Who were the individuals that you were able to locate on Facebook?

A      [Jordan]. Of course, we already knew [Mannette]. And then Dakota Firth.

Q      All right. And did you see an individual that matched the physical description of the individual that fired a weapon at you?

A      She did. I don't really look at Facebook very often. She was the one who was doing most of the digging.

Q      All right. But she found -- Valerie found a person on Facebook that met that description that was similar to the person that you've pointed out here in the courtroom?

A      Yes, sir.

Q      And what was the name of that individual on Facebook?

A      Eric Turner.

This testimony is nothing more than an attenuated version of Valerie's and Thompson's trial testimony that the gunman was a short, stocky, black man and that Turner matched that description. *See Fernandez v. State*, 989 S.W.2d 781, 786 (Tex. App.—San Antonio 1998, pet. ref'd)

14

(insufficient corroboration where vague description of body type could match "hundreds or thousands of other men in the area").

The majority is correct that the issue of whether the evidence is sufficient to prove a defendant's guilt beyond a reasonable doubt is different from the issue of whether the evidence is sufficient to corroborate accomplice testimony. The majority is also correct that, if all we were concerned with here was the sufficiency of the evidence, Jordan's testimony would be sufficient under the federal *Jackson* standard. And, it is true that the accomplice-witness rule is not a federal constitutional standard, but a state, statutory standard.

Nevertheless, to hold that the testimony in this case is sufficient detail that tends to connect Turner to the offense would—in my opinion—render this state, statutory standard no standard at all. If testimony that the gunman was a short, stocky, black man and that Turner matched that description, is sufficient corroboration to satisfy the accomplice-witness rule, then it is difficult to imagine what evidence would be insufficient. Accordingly, because the entirety of the non-accomplice evidence does nothing more than "point the finger of suspicion" at Turner, I would reverse the judgment of conviction and enter a judgment of acquittal.


Ralph K. Burgess
Justice

Date Submitted:     November 28, 2018
Date Decided:       February 15, 2019

Publish

15