# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-19-00194-CR

---

**Leroy Pickens, Jr., Appellant**

**v.**

**The State of Texas, Appellee**

---

### FROM THE 35TH DISTRICT COURT OF MILLS COUNTY
### NO. 3274, THE HONORABLE STEPHEN ELLIS, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

After a bench trial, Leroy Pickens, Jr., was found guilty of possessing less than one gram of a controlled substance (methamphetamine). *See* Tex. Health & Safety Code §§ 481.102(6), .115(a), (b). The indictment in this case contained two enhancement paragraphs alleging that Pickens had previously been convicted of two state-jail felonies for possession of a controlled substance. *See* Tex. Penal Code § 12.425. Pickens pleaded true to the enhancement allegations. The district court sentenced him to ten years' imprisonment. *See id.* § 12.34. On appeal, Pickens contends that the evidence is insufficient to corroborate the accomplice-witness testimony presented at trial and that the evidence is insufficient to link him to the methamphetamine. We will affirm the district court's judgment of conviction.

## BACKGROUND

Pickens was charged with possession of methamphetamine following a traffic stop initiated by Mills County Sheriff's Deputy Johnny Brown. At the time of the traffic stop, Pickens's then-girlfriend Casey Rhea was driving the truck, and Pickens was a front-seat passenger. After the traffic stop, both Rhea and Pickens were arrested for possession of a controlled substance. During the trial, Deputy Brown, Rhea, and Pickens all testified regarding the offense in question, and the State also called Chris Green to testify as an expert in fingerprint analysis.

In his testimony, Deputy Brown recalled that he initiated a traffic stop of a truck being driven by Rhea after he noticed that one of the brake lights was not working. Next, Deputy Brown testified that as he approached the truck, he noticed an open beer can in the console and detected a "very strong odor of alcohol." Further, Deputy Brown explained that after he smelled alcohol in the car, he asked Rhea to step out of the truck and show him the contents of her pockets. Deputy Brown testified that Rhea's pocket contained "[a] couple of Q-tips that were really dirty on the end" and "a real short cut straw." Deputy Brown related that both types of items can be used in connection with the production or consumption of illegal drugs. In his testimony, Deputy Brown also explained that while he was talking with Rhea, Pickens moved an open beer can from the front seat to the back seat. Deputy Brown later characterized Pickens's action as "[h]iding evidence that was in plain view."

Additionally, Deputy Brown testified that Pickens stated that he was planning to buy the truck from his brother-in-law and consented to Deputy Brown's request to search the truck. Regarding the search, Deputy Brown testified that another officer discovered a light bulb wrapped in a shirt on the front passenger floorboard, that the light bulb had been modified in

2

order for it to be used as "a smoking device," that he could see residue inside the light bulb, and that the light bulb was collected for testing purposes. Prior to Deputy Brown testifying, reports of testing done on the light bulb and the straw from Rhea's pocket were admitted into evidence and showed that both items tested positive for methamphetamine and that the light bulb contained 0.03 grams of methamphetamine. Further, Deputy Brown testified that he later discovered a digital scale in the glove compartment in front of Pickens's seat. On cross-examination, Deputy Brown testified that Pickens cooperated with the investigation, that Pickens seemed surprised to learn that there was a controlled substance in the car, that Pickens denied having any knowledge of the light bulb or its contents, that Rhea seemed reluctant to give permission to search the truck, and that Deputy Brown believed that she was not being truthful that night.

During Deputy Brown's testimony, a recording from his body camera was admitted into evidence, and Pickens requested that the entire recording be played. The recording is generally consistent with Deputy Brown's testimony regarding his interaction with Pickens and Rhea and regarding the discovery of the light bulb, the straw, and the digital scale. The footage also documents another officer recovering a different straw from the center console. The recording also initially shows a beer can in the front console and later captures Deputy Brown commenting to Pickens that the beer can had been moved to the back seat. Additionally, the recording chronicles Pickens stating that everything in the truck belonged to him and Rhea except the items located in a bag on the back seat.

After Deputy Brown finished testifying, Rhea was called to the stand. In her testimony, Rhea stated that the truck belonged to Pickens. Further, Rhea testified that they were visiting a friend before she and Pickens were arrested, that she smoked marijuana at the friend's house, that Pickens smoked methamphetamine at the house "[w]ith a light bulb and a straw," that

3

the light bulb used by Pickens was the same one later found in the truck, that Pickens gave her the straw, and that she placed it in her pocket. Additionally, Rhea testified that she had also been charged with possession of the methamphetamine found in the truck. During her cross-examination, Rhea admitted that she had previously been convicted twice of possession of a controlled substance and that she never mentioned to Pickens's lawyer that Pickens had used methamphetamine that night.

During the trial, Pickens elected to testify. In his testimony, Pickens admitted that he was previously convicted of multiple offenses, but Pickens stated that he had not used any illegal drugs since 2008. Additionally, Pickens admitted to moving beer cans from the front seat, but he denied trying to conceal anything or otherwise hinder Deputy Brown's investigation. Further, Pickens denied having any knowledge of the methamphetamine or the light bulb found in the truck. Pickens also stated that Rhea was not telling the truth during her testimony. During his cross-examination, Pickens admitted that he was previously convicted of tampering with evidence but denied being convicted of possession of a controlled substance in 2006 and 2008 and being convicted of delivery of crack cocaine in 2004. Finally, Pickens admitted that he was convicted of aggravated assault against his ex-wife in 2015, but he testified that the case "was a lie" and that he did not actually assault her.

In rebuttal, the State called Green to the stand to testify as a fingerprint-analysis expert. In his testimony, Green explained that he obtained Pickens's fingerprints prior to testifying. During Green's testimony, the following prior judgments of conviction bearing Pickens's name were admitted into evidence: a 2010 conviction for possession of cocaine, a 2004 conviction for delivery of crack cocaine, a 2006 conviction for possession of cocaine, a 2008 conviction for possession of cocaine, and a 2006 conviction for tampering with physical

4

evidence. Green testified that he was able to link Pickens to all of the prior convictions by comparing Pickens's known fingerprints with those associated with each of the prior convictions or by using another identifying marker.

After both sides rested and closed, the district court found Pickens guilty of the charged offense.

## DISCUSSION

In his first issue on appeal, Pickens contends that the district court erred by considering Rhea's testimony at trial because there was insufficient evidence to corroborate her accomplice testimony. In his second issue on appeal, Pickens argues that the evidence is legally insufficient to support his conviction "because the State failed to prove Pickens was linked to the methamphetamine found in his truck." We will address Pickens's second issue first.

### Sufficiency of the Evidence

Under the Health and Safety Code, a person commits an offense if he "knowingly or intentionally possesses" methamphetamine in an amount of less than one gram. Tex. Health & Safety Code §§ 481.102(6), .115(a), (b). In this context, "'possession' means actual care, custody, control, or management." *Id.* § 481.002(38). Accordingly, "[t]o prove unlawful possession of a controlled substance, the State must prove that: (1) the accused exercised control, management, or care over the substance; and (2) the accused knew the matter possessed was contraband." *Poindexter v. State*, 153 S.W.3d 402, 405 (Tex. Crim. App. 2005), *abrogated on other grounds by Robinson v. State*, 466 S.W.3d 166, 173 & n.32 (Tex. Crim. App. 2015). "Possession is a voluntary act if the possessor knowingly obtains or receives the thing possessed or is aware of his control of the thing for a sufficient time to permit him to terminate his control." Tex. Penal

5

Code § 6.01(b). "Intent can be inferred from the acts, words, and conduct of the accused." *Reed v. State*, 769 S.W.2d 323, 330 (Tex. App.—San Antonio 1989, pet. ref'd).

"[W]hen the accused, like appellant, is not in exclusive possession of the place where the contraband is found, we cannot conclude that the accused had knowledge of and control over the contraband unless the State establishes an 'affirmative link' between the accused and the contraband." *Robinson v. State*, 174 S.W.3d 320, 325 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd). Accordingly, "[m]ere presence at the location where drugs are found is thus insufficient, by itself, to establish actual care, custody, or control of those drugs." *Evans v. State*, 202 S.W.3d 158, 162 (Tex. Crim. App. 2006). "However, presence or proximity, when combined with other evidence, either direct or circumstantial (e.g., 'links'), may well be sufficient to establish that element beyond a reasonable doubt." *Id.*

The Court of Criminal Appeals has noted that the following "'affirmative links' . . . may circumstantially establish the legal sufficiency of the evidence to provide a knowing 'possession'":

> "(1) the defendant's presence when a search is conducted; (2) whether the contraband was in plain view; (3) the defendant's proximity to and the accessibility of the narcotic; (4) whether the defendant was under the influence of narcotics when arrested; (5) whether the defendant possessed other contraband or narcotics when arrested; (6) whether the defendant made incriminating statements when arrested; (7) whether the defendant attempted to flee; (8) whether the defendant made furtive gestures; (9) whether there was an odor of contraband; (10) whether other contraband or drug paraphernalia were present; (11) whether the defendant owned or had the right to possess the place where the drugs were found; (12) whether the place where the drugs were found was enclosed; (13) whether the defendant was found with a large amount of cash; and (14) whether the conduct of the defendant indicated a consciousness of guilt."

*Id.* at 162 n.12 (quoting *Evans v. State*, 185 S.W.3d 30, 35 (Tex. App.—San Antonio 2005), *rev'd on other grounds by Evans*, 202 S.W.3d 158).  In performing this review, "[i]t is . . . not the number of links that is dispositive, but rather the logical force of all of the evidence, direct and circumstantial." *Id.* at 162.  The force of the links need not be such as to exclude every other alternative hypothesis except the defendant's guilt.  *Brown v. State*, 911 S.W.2d 744, 748 (Tex. Crim. App. 1995).

Under a legal-sufficiency standard of review, appellate courts view the evidence in the light most favorable to the verdict and determine whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  When performing this review, an appellate court must bear in mind that it is the factfinder's duty to weigh the evidence, to resolve conflicts in the testimony, and to make "reasonable inferences from basic facts to ultimate facts." *Id.*  Moreover, appellate courts must "determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Hooper v. State*, 214 S.W.3d 9, 16-17 (Tex. Crim. App. 2007).  Furthermore, appellate courts presume that conflicting inferences were resolved in favor of the conviction and "defer to that determination." *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).  In addition, courts must bear in mind that "direct and circumstantial evidence are treated equally" and that "[c]ircumstantial evidence is as probative as direct evidence in establishing the guilt of an actor" and "can be sufficient" on its own "to establish guilt." *Kiffe v. State*, 361 S.W.3d 104, 108 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd).  The evidence is legally insufficient if "the record contains no evidence, or merely a 'modicum' of evidence, probative of an element of the offense" or if "the evidence conclusively establishes a reasonable doubt." *Id.* at 107 (quoting

7

*Jackson*, 443 U.S. at 320). Furthermore, "[i]n reviewing the legal sufficiency of the evidence supporting a conviction, appellate courts consider '*all* evidence that the trier of fact was permitted to consider, regardless of whether it was rightly or wrongly admitted.'" *Villarreal v. State*, 470 S.W.3d 168, 170 (Tex. App.—Austin 2015, no pet.) (quoting *Demond v. State*, 452 S.W.3d 435, 445 (Tex. App.—Austin 2014, pet. ref'd) (emphasis added in *Villarreal*)).

When asserting that the evidence is insufficient, Pickens notes that many of the factors identified by the Court of Criminal Appeals for establishing affirmative links were not present here. For example, Pickens contends that the methamphetamine was not in plain sight and was instead inside a light bulb hidden by a shirt, that he was not under the influence of any drugs, that he did not have any drugs or paraphernalia on him when he was arrested, that he made no incriminating statements, that he made no attempt to flee, that he made no furtive gestures concerning the light bulb, that there were no odors indicating the presence of the contraband, that all of the drugs were found in the light bulb, that he did not have a large amount of cash on him when he was arrested, and that he did not behave in a manner suggesting a consciousness of guilt. Moreover, Pickens asserts that instead of establishing affirmative links the evidence demonstrated that he cooperated with the investigation and gave permission for Deputy Brown to search the truck. Further, Pickens argues that there was no evidence that he had any familiarity with methamphetamine or that he would recognize that the light bulb had been modified to be used for the consumption of methamphetamine or that the residue in the light bulb was methamphetamine.[1]

---

[1] As support for his arguments, Pickens refers to an opinion by one of our sister courts of appeals in which the court found the evidence insufficient to support a conviction for possession of a controlled substance even though the defendant was found in possession of "a crack pipe." *See Williams v. State*, 478 S.W.3d 947 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd).

Although we agree with Pickens that not all of the linking factors identified by the Court of Criminal Appeals are present here, many of those factors are and link Pickens to the contraband. First, Pickens was present when the search was conducted. Further, the contraband was discovered in a shirt on the floorboard in front of Pickens's seat, and he had access to the contraband. *Cf. Poindexter*, 153 S.W.3d at 409 n.24 (stating that affirmative link "can be established when . . . the contraband is hidden in a place tied to the accused"); *Lewis v. State*, 664 S.W.2d 345, 349 (Tex. Crim. App. 1984) (concluding that evidence was sufficient to support conviction, in part, because evidence showed that defendant was sitting in right rear seat and because "a partially full baggy of marihuana was found in the right rear floorboard" inside paper sack); *Deshong v. State*, 625 S.W.2d 327, 328, 329 (Tex. Crim. App. 1981) (deciding that evidence was sufficient, in part, because contraband was found inside automobile, which was

However, in that case the suspected cocaine was too small to be seen, weighed, or measured, and our sister court explained that in those circumstances guilt cannot be established by mere possession and must be shown by other evidence indicating that the defendant knew that the substance was an illegal drug. *Id.* at 948, 949; *see also id.* at 949 (distinguishing circumstances in *Williams* from those in *Joseph v. State*, 897 S.W.2d 374, 375-76 (Tex. Crim. App. 1995), where defendant was found in known drug house holding syringe containing small amount of cocaine in way suggesting that he either had inserted the syringe in his arm or was about to and from those in *King v. State*, 895 S.W.2d 701, 703-04 (Tex. Crim. App. 1995), where cocaine residue was visible, where pipe was discovered wet with saliva, and where defendant appeared intoxicated). In this case, the methamphetamine was seen, weighed, and measured, and the amount recovered exceeded amounts that courts have found sufficient to support a conviction for possession of a controlled substance. *See Caballero v. State*, 881 S.W.2d 745, 747, 748 (Tex. App.—Houston [14th Dist.] 1994, no pet.) (concluding that evidence was sufficient because measurable amount (0.0069 grams) of cocaine was recovered, because residue was visible, because "the cocaine was located in drug paraphernalia," and because defendant had prior conviction for possession of cocaine); *Chavez v. State*, 768 S.W.2d 366, 367-68 (Tex. App.—Houston [14th Dist.] 1989, pet. ref'd) (determining that evidence was sufficient because baggie found in defendant's pocket contained measurable amount (0.0005 grams) of cocaine that was "visible to the eye"). Accordingly, the analysis from *Williams* would not seem to apply to the circumstances present here. *Cf. Caballero*, 881 S.W.2d at 747 (explaining that "[t]here is no minimum quantity of" illegal drugs "required to sustain a conviction"). In any event, as set out later in the opinion, other evidence was presented indicating that Pickens knew he possessed a controlled substance.

9

"an enclosed area," because contraband was discovered on "floorboard directly in front of" defendant's seat, and because "the contraband was found on the same side of the car seat as that in which appellant was sitting"); *Robinson*, 174 S.W.3d at 326-27, 330 (determining that evidence was sufficient to support possession conviction, in part, because defendant "had control over the truck and its contents" and because contraband "was within the vicinity of and easily accessible to" defendant inside unlocked compartment "concealed under a shirt"); *Hawkins v. State*, 89 S.W.3d 674, 677 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd) (noting that gun "was within easy reach of" defendant when determining that evidence was sufficient to establish possession).

In addition, although no evidence was introduced indicating that Pickens made any furtive gestures involving the contraband, Deputy Brown's testimony and the recording from his body camera indicate that Pickens moved at least one open beer can while Deputy Brown talked with Rhea. Furthermore, Deputy Brown testified that he found a digital scale in the glove compartment in front of Pickens's seat, and the recording captures one of the other officers recovering a straw from the center console that was similar to the one that was in Rhea's pocket. *Cf. Medina v. State*, 242 S.W.3d 573, 575, 577 (Tex. App.—Waco 2007, no pet.) (determining that evidence was sufficient to affirmatively link defendant to drugs found under hood of automobile driven by defendant's girlfriend, in part, because "[t]he record indicates that Medina was in possession of the backpack containing" "scales commonly used for measuring methamphetamine . . . and therefore was in possession of paraphernalia").

Moreover, Deputy Brown testified that during the traffic stop Pickens stated that he was purchasing the truck from his brother-in-law, and the recording documents Pickens stating that everything in the truck except the contents of a bag in the back seat belonged to him

10

and Rhea. *Cf. Bennett v. State*, No. 10-16-00346-CR, 2017 WL 4182428, at *1, *2 (Tex. App.—Waco Sept. 20, 2017, pet. ref'd) (mem. op., not designated for publication) (commenting that defendant was owner of and passenger in vehicle and that drugs were "found in the enclosed area of the vehicle" when concluding that evidence was sufficient to support conviction for possession of controlled substance); *Batiste v. State*, 217 S.W.3d 74, 77, 80, 81 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (explaining when determining that evidence was sufficient to link defendant to contraband that defendant was passenger in car when it was pulled over but "was in care, custody, and control of the vehicle before and at the time of the incident").

Additionally, although Pickens presented evidence undermining Rhea's credibility, she explained in her testimony that earlier that evening he smoked methamphetamine from the light bulb found in the truck and that he gave her the straw that he used.[2] In resolving any conflicts in the testimony presented at trial and in making credibility determinations regarding the witnesses, the district court was aided by Green's testimony and the judgments of conviction regarding crimes that Pickens previously committed, including crimes involving the possession or delivery of controlled substances, and the testimony from Pickens in which he denied being convicted of several of those crimes. *Cf. Wingfield v. State*, 197 S.W.3d 922, 925 (Tex. App.—Dallas 2006, no pet.) (explaining that evidence that defendant "had at other times

___

[2] Although Pickens recognizes in his brief that Rhea provided testimony indicating that he possessed the methamphetamine, he insists that her testimony cannot be considered in a sufficiency analysis because she was an accomplice and because her testimony was not sufficiently corroborated. However, as mentioned above, sufficiency reviews consider all of the evidence submitted during the trial regardless of whether the evidence was rightly or wrongly admitted. *See Villarreal v. State*, 470 S.W.3d 168, 170 (Tex. App.—Austin 2015, no pet.); *see also Hernandez v. State*, No. 04-18-00036-CR, __S.W.3d__, 2019 WL 3432105, at *5 (Tex. App.—San Antonio July 31, 2019, pet. ref'd) (noting distinction between challenge to legal sufficiency of evidence and challenge asserting that accomplice-witness testimony is not sufficiently corroborated and explaining that legal-sufficiency analysis considers "the accomplice-witness evidence").

used" illegal drugs is "circumstantial evidence that" defendant "intentionally or knowingly possessed" illegal drugs at relevant time); *see also Hung Phuoc Le v. State*, 479 S.W.3d 462, 470-71 (Tex. App.—Houston [14th Dist.] 2015, no pet.) (noting that "evidence that the appellant had on other occasions committed similar offenses to the one he is charged with serves to reduce the possibility that the act in question was done with innocent intent").

In light of the evidence summarized above, of the factfinder's role in making credibility determinations and resolving conflicts in the evidence, and of our standard of review for legal-sufficiency challenges, we conclude that the district court could have reasonably inferred that Pickens exercised actual care, custody, control, or management of less than one gram of methamphetamine and that he knew that it was contraband. Accordingly, we must conclude that the evidence is legally sufficient to support Pickens's conviction for possession of a controlled substance and, therefore, overrule his second issue on appeal.

**Accomplice Testimony**

During the trial, the district court found that Rhea was an accomplice as a matter of law. A witness is an accomplice as matter of law "[i]f the witness has been charged with the same offense as the defendant or a lesser-included offense." *See Ash v. State*, 533 S.W.3d 878, 886 (Tex. Crim. App. 2017); *see also Medina v. State*, 7 S.W.3d 633, 641 (Tex. Crim. App. 1999) (noting that "[a] person is an accomplice if he participates before, during, or after the commission of the crime and can be prosecuted for the same offense as the defendant or for a lesser-included offense"). "A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the

12

offense." Tex. Code Crim. Proc. art. 38.14. This rule "is not mandated by common law or the federal constitution" and instead "reflects a legislative determination that accomplice testimony implicating another person should be viewed with a measure of caution, because accomplices often have incentives to lie, such as to avoid punishment or shift blame to another person." *Blake v. State*, 971 S.W.2d 451, 454 (Tex. Crim. App. 1998) (internal footnote omitted).

Because the rule under article 38.14 is statutorily imposed, it "is not derived from . . . constitutional principles that define the legal . . . sufficiency standard[]." *Malone v. State*, 253 S.W.3d 253, 257 (Tex. Crim. App. 2008) (quoting *Druery v. State*, 225 S.W.3d 491, 498 (Tex. Crim. App. 2007)). "When reviewing the sufficiency of non-accomplice evidence under article 38.14, we decide whether the inculpatory evidence tends to connect the accused to the commission of the offense." *Smith v. State*, 332 S.W.3d 425, 442 (Tex. Crim. App. 2011); *see Roys v. State*, 416 S.W.3d 229, 234 (Tex. App.—Amarillo 2013, pet. ref'd). In performing this analysis, "the reviewing court eliminates all of the accomplice testimony from consideration and then examines the remaining portions of the record." *Castillo v. State*, 221 S.W.3d 689, 691 (Tex. Crim. App. 2007). The non-accomplice evidence is viewed "in the light most favorable to the verdict," *Knox v. State*, 934 S.W.2d 678, 686 (Tex. Crim. App. 1996), and it "need not directly link the defendant to the crime" or "'establish his guilt beyond a reasonable doubt'" on its own, *Roys*, 416 S.W.3d at 234 (quoting *Castillo*, 221 S.W.3d at 691). Non-accomplice evidence may be circumstantial or direct. *See Smith*, 332 S.W.3d at 442. "[W]hen there are conflicting views of the evidence—one that tends to connect the accused to the offense and one that does not—we will defer to the factfinder's resolution of the evidence." *Id.*

Although "the accused's mere presence in the company of the accomplice before, during, and after the commission of the offense is insufficient by itself to corroborate accomplice

testimony, evidence of such presence, coupled with other suspicious circumstances, may tend to connect the accused to the offense." *Dowthitt v. State*, 931 S.W.2d 244, 249 (Tex. Crim. App. 1996). "Even apparently insignificant incriminating circumstances may sometimes afford satisfactory evidence of corroboration." *Id.* "[T]he tends-to-connect standard does not present a high threshold." *Turner v. State*, 571 S.W.3d 283, 287 (Tex. App.—Texarkana 2019, pet. ref'd). "There is no set amount of non-accomplice corroboration evidence that is required for sufficiency purposes." *Malone*, 253 S.W.3d at 257. If the non-accomplice evidence does not sufficiently corroborate an accomplice's testimony, "then the defendant is entitled to an acquittal on appeal." *Taylor v. State*, 10 S.W.3d 673, 685 (Tex. Crim. App. 2000).

On appeal, Pickens contends that the evidence at trial did not sufficiently corroborate Rhea's testimony for several reasons. First, Pickens asserts that, unlike Rhea, he did not have any "illegal narcotics" or "paraphernalia on him when he was searched" and immediately gave his consent to Deputy Brown's request to search the truck. Next, Pickens contends that even if he did move a beer can, there was no evidence that he moved or otherwise attempted to hide the shirt or the light bulb inside the shirt. Further, Pickens highlights portions of Deputy Brown's testimony in which he stated that he believed Rhea was not being truthful that night and that Pickens seemed surprised to learn that there were illegal drugs in the truck. Moreover, Pickens asserts that there was no evidence linking him to the shirt covering the light bulb, to the light bulb, or to the other drug paraphernalia. Relatedly, Pickens argues that no witnesses, other than Rhea, provided any testimony indicating that he was aware of the light bulb, its purpose, or its contents and contends that cases deciding that accomplice-witness testimony was sufficiently corroborated often involve stronger corroborating testimony from nonaccomplice witnesses connecting the defendant to the alleged crime. *See, e.g.*, *Turner*,

571 S.W.3d at 288 (concluding that nonaccomplice testimony was sufficient to corroborate accomplice's testimony where nonaccomplice testimony established, among other things, that defendant and accomplice were seen together before crime and that defendant "matched the physical description of the gunman"); *Meador v. State*, 941 S.W.2d 156, 159, 160 (Tex. App.—Corpus Christi 1996, pet. ref'd) (determining that nonaccomplice evidence sufficiently corroborated testimony from accomplices where nonaccomplices testified, among other things, that accomplice handed defendant "twenty dollars worth of cocaine . . . for delivery to" another accomplice, that defendant was sitting at table with cocaine "laying on" table, and that defendant injected himself with cocaine).

The nonaccomplice evidence presented in this case demonstrated that Pickens was with Rhea before the search began and was present when the search by the police officers occurred. In addition, the police discovered the methamphetamine inside a light bulb on the floorboard in front of Pickens's seat by his feet. Moreover, Pickens informed the police that he was purchasing the truck from his brother-in-law and claimed an ownership interest in the contents of the truck except for the items contained in a bag located behind the front seat. Further, the police discovered a digital scale in the glove box in front of Pickens's seat and a straw in the center console similar to the one found in Rhea's pocket. Finally, Deputy Brown also noted that Pickens moved an open beer can from the center console to the back of the truck while Deputy Brown was talking with Rhea. *See Malone*, 253 S.W.3d at 257 (noting that accused's presence at scene of crime when coupled with other suspicious circumstances may provide sufficient corroboration for accomplice evidence).

Viewing the nonaccomplice evidence in the light most favorable to the verdict, including the suspicious circumstances, we conclude that the evidence is sufficient to connect

15

Pickens to the offense of possession of less than one gram of methamphetamine apart from the accomplice testimony. *Cf. Tooker v. State*, No. 03-17-00348-CR, 2017 WL 4900497, at \*5 (Tex. App.—Austin Oct. 27, 2017, no pet.) (mem. op., not designated for publication) (determining that testimony from defendant and recordings from dashboard camera and body camera were "sufficient to corroborate [accomplice]'s testimony by connecting [defendant] to the commission of the offense"). Accordingly, we overrule Pickens's first issue on appeal.

## CONCLUSION

Having overruled both of Pickens's issues on appeal, we affirm the district court's judgment of conviction.

_____

Thomas J. Baker, Justice

Before Justices Goodwin, Baker, and Kelly

Affirmed

Filed:   October 16, 2019

Do Not Publish