# NO. 12-23-00191-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *MEYDON LYMBERY,* *APPELLANT* | § | *APPEAL FROM THE 217TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,* *APPELLEE* | § | *ANGELINA COUNTY, TEXAS* |

### *OPINION*

Meydon Lymbery[1] appeals his conviction for violating the Texas Open Meetings Act (TOMA) by knowingly participating in a meeting that constituted a quorum of the Angelina County Commissioners Court for the purpose of discussion or deliberation of county business. In two issues, Appellant challenges the sufficiency of the evidence. We affirm.

### BACKGROUND

Appellant was charged by indictment with violating TOMA.[2] Specifically, the indictment alleged that Appellant knowingly participated in a meeting in violation of TOMA that constituted a quorum of the Angelina County Commissioners Court for the purpose of discussion or deliberation of county business. Appellant pleaded "not guilty," and the matter proceeded to a bench trial.

---

[1] We note that in the trial court's judgment, Appellant's surname is spelled "Lymberry." The trial court's order imposing conditions of community supervision states that Appellant's name is "Meydon P. Lymbery III."

[2] *See* TEX. GOV'T CODE ANN. § 551.144 (West 2017).

When the offense occurred on August 9, 2021, Appellant was the County Judge in Angelina County, Texas, and as such, he was a member of the Commissioners Court. The Angelina County Attorney, Cary Kirby, testified that the Commissioners Court "is comprised of five members, so a quorum is considered to be three members."[3] Commissioner Steve Smith, who Appellant appointed to replace former Commissioner Bobby Cheshire, was sworn in on the morning of August 9, 2021. A regularly scheduled Commissioners Court meeting was set for August 10, as was an executive session, to vote on whether to hire Chuck Walker as county road engineer.

Kirby explained that on August 9, he received a phone call from Commissioner Terry Pitts notifying him "that there may have been a meeting [that day] which was possibly illegal under the Open Meetings Act." Kirby viewed a surveillance video from the camera outside Appellant's office, which confirmed that three members of the Commissioners Court (Appellant, Commissioner Rodney Paulette, and Smith) were together in Appellant's office on August 9, 2021. Because Kirby was not present at the meeting in Appellant's office, his only knowledge of what occurred came from viewing the surveillance video, which lacks audio. According to Kirby, an article about the meeting appeared in the *Lufkin Daily News*, and the article reported that Appellant admitted the meeting was "inappropriate."

Kirby eventually prepared a sworn complaint that alleged a violation of TOMA and contacted the Angelina County District Attorney's Office to request an investigation by the Texas Rangers. Kirby testified that the surveillance video, which is approximately fifty-five minutes long, reflects that Appellant, Paulette, and Smith were together in Appellant's office having a conversation for approximately thirty-five minutes.[4] According to Kirby, Appellant began serving as county judge on January 1, 2019, and Appellant received training regarding open meetings, as required by the Office of the Attorney General.

Sallie Alexander testified that she has served as administrator for the Angelina County Judge for thirty-six years. On the afternoon of August 9, Alexander was making copies for the next day's session of Commissioners Court. Appellant asked Alexander to prepare a folder for

---

[3] Kirby testified that on the date of the offense, the five members of the Commissioners Court were Appellant and Commissioners Kermit Kennedy, Terry Pitts, Rodney Paulette, and Steve Smith.

[4] During the conversation, Appellant twice left the room and returned. Paulette also briefly left the room and returned.

Smith, and when Alexander went to Appellant's office to deliver the folder, Smith and Paulette were present in Appellant's office with Appellant. Alexander testified, "[a]fter I saw what was in there, I got nervous. I could not believe what I was seeing, didn't believe what I was hearing[,] and I just hurried up to get out of there. I mean, it was wrong." According to Alexander, Smith wanted to know if Walker would be at court because Smith wanted to ask him questions. Alexander explained that Appellant was in his office when Smith asked the question, and Appellant told Smith that he would have an opportunity to question Walker because Walker would be in court. Alexander left Appellant's office and conversed with Commissioner Kermit Kennedy and a co-worker, Debbie Lewis, about what she observed. Alexander told Lewis, "there's a quorum in there, . . . it's three men in there. . . . it's wrong."

Lewis, the administrative assistant for the county commissioners, testified that after Smith was sworn in on August 9, he returned that afternoon to get his folder "for the next day's commissioners court." According to Lewis, the emergency management coordinator watches the security cameras, and he called her upon observing the presence of a quorum in Appellant's office. Lewis explained that she and the emergency management coordinator were "appalled." Lewis testified that she, Alexander, and Kennedy "were all aware and we were all shocked." When asked whether she knew that Appellant, Paulette, and Smith were discussing county business, she said she did not, and she explained, "I heard Mr. Paulette introduce himself to Mr. Smith. That's all I heard." Kennedy testified that he saw Appellant, Paulette, and a third person, who he did not know, in Appellant's office. Kennedy learned from Lewis that Smith was the third person in the office. Kennedy explained that he, Lewis, and Alexander were surprised and concerned, but he did not consider intervening in the meeting because his presence in Appellant's office "would have made it that much worse."

Smith testified that both he and Appellant were ultimately charged with violating TOMA. Smith admitted guilt to the investigating officer and entered into a plea agreement, pursuant to which he received probation under a pretrial diversion agreement in exchange for testifying against Appellant. According to Smith, after he was sworn in on the morning of August 9, Appellant told him to return after lunch to pick up a packet. When Smith returned and entered Appellant's office, Appellant and Paulette were present, and Smith and Paulette introduced themselves to each other and made small talk for five or ten minutes. When asked what they discussed after exchanging pleasantries, Smith stated, "we talked about . . . what was in the packet and . . . what was on the

3

agenda and . . . that Chuck Walker . . . was going to come in for the executive session so that we could get him in place. And, anyhow, . . . it was conversations related to that." Smith recalled that they discussed Paulette making a motion to hire Walker and Smith seconding Paulette's motion. Smith testified that he believes they also discussed Walker's employment history, as well as "some of the budget stuff . . . getting ready to go into that the next day."

According to Smith, after the meeting ended, he went home and reviewed the material in his packet. Smith explained that he had not yet received training regarding TOMA when the meeting occurred. Smith admitted that in a newspaper article, he denied that any county business was discussed, and he explained, "I felt that . . . I had an obligation to them[,] and I wanted to fit in, so I put trust in them." In addition, Smith testified that when Appellant "put the article in the paper," he asked both Smith and Paulette to review it, and Smith admitted that he knew the article contained falsehoods. Moreover, Smith admitted that when he spoke with the sheriff and sheriff's deputies, he falsely stated that no county business was discussed.

According to Smith, several people told him that "it's just a misdemeanor[,] and it's not more than just a speeding ticket[,]" and "whenever the sheriff says that, you think, hey, it's not [a] big deal." Smith explained, "I started off denying that anything was done. And . . . whenever you think it's just a speeding ticket and the Texas [R]anger shows up at your door, that is pretty serious. That's not a speeding ticket any longer, so . . . I was real nervous, I was upset." When the ranger began questioning Smith and confronted him with information he had already obtained, Smith told him that county business was discussed during the meeting. Smith told the ranger that they discussed Walker at the meeting, including Smith's desire to interview Walker, as well as the situation with former Commissioner Cheshire. The next day, the Commissioners Court went through its agenda, went into executive session with Walker, and after the executive session, Paulette made a motion to hire Walker and Smith seconded the motion. Smith testified that he felt embarrassed, betrayed, and misled regarding the meeting. The ranger asked Smith to keep their conversation confidential, and he agreed to do so. According to Smith, the sheriff told him, "[Y]ou need to stick with your story because it causes big troubles if you don't." The former sheriff of Angelina County, Greg Sanches, testified that on at least two occasions, Smith told him county business was not discussed at the meeting, and he denied telling Smith to lie about whether county business was discussed.

During cross-examination, Smith explained that his memory about the events in question

4

improved after his initial conversation with the ranger because he had time to think about the events and replay them in his mind. Smith admitted that he entered into an immunity agreement with the district attorney's office in exchange for his testimony. Smith testified that Appellant did a lot of the talking during the meeting, and when asked if any of the conversation happened when Appellant was not in the room, Smith explained, "When he was out of the room, we continued to talk about business[.]" During redirect examination, Smith explained that they discussed business both before and after he received the packet, and he agreed that the district attorney merely asked him for a truthful statement and had no input regarding the content of the statement he provided. When told that the video reflected that all three men were present in Appellant's office for approximately thirty-five minutes and asked to estimate what percentage of that time involved discussing county business, Smith testified, "I would say the biggest part of it."

Lieutenant Ranger Ryan Clendennen testified that he investigated the allegations regarding a violation of TOMA. Clendennen explained, "when you look at the [surveillance] video in its entirety and listen to what [Appellant] is saying, it looks like the meeting is planned. He initiates the meeting[.] As Mr. Smith walks up, [Appellant] initiates it[]" by waving Smith into his office with Paulette and Appellant. According to Clendennen, the video indicates that all three men were present for about thirty minutes and that Appellant "is doing most of the talking in there." Clendennen explained that the video shows Appellant picking up a document from his desk and showing it to Paulette during the conversation, as well as taking a telephone call on the landline in his office and taking notes during the call. Clendennen testified that Appellant gave a statement to him that is inconsistent with what the video shows.

The trial judge ultimately found Appellant "guilty," sentenced him to serve ninety days in the Angelina County Jail, and assessed a fine of $350, but suspended imposition of sentence and placed Appellant on community supervision for ninety days. This appeal followed.

**SUFFICIENCY OF THE EVIDENCE**

In issue one, Appellant contends the evidence is insufficient to corroborate Smith's testimony, and in issue two, Appellant argues that even considering Smith's testimony, the evidence is insufficient to prove that Appellant knowingly participated in a closed meeting. Because both issues challenge the sufficiency of the evidence, we will address them together. Appellant maintains that "the State's non-accomplice evidence d[oes] not corroborate Smith's

claim that he, [Appellant], and Paulette engaged in deliberation regarding county business[,]" and he asserts that there was "no evidence that any discussion of county business was more than incidental to the group's spontaneous social gathering."

**Standard of Review and Applicable Law**

When evaluating the sufficiency of the evidence, we review all the evidence in the light most favorable to the verdict to determine whether any rational factfinder could have found the essential elements of the offense beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 902 n.19 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979)); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007); *see also Robinson v. State*, 466 S.W.3d 166, 172 (Tex. Crim. App. 2015) (noting that standard for appellate review of evidentiary sufficiency applies to jury trials and bench trials). Legal sufficiency is the constitutional minimum required by the Due Process Clause of the Fourteenth Amendment to sustain a criminal conviction. *See Jackson*, 443 U.S. at 315-16, 99 S. Ct. at 2786-87; *see also Escobedo v. State*, 6 S.W.3d 1, 6 (Tex. App.—San Antonio 1999, pet. ref'd). The factfinder is the ultimate authority on the credibility of witnesses and the weight to be given to their testimony. *Penagraph v. State*, 623 S.W.2d 341, 343 (Tex. Crim. App. [Panel Op.] 1981); *see also Bonham v. State*, 680 S.W.2d 815, 819 (Tex. Crim. App. 1984). The factfinder may accept one version of the facts and reject another or reject any of a witness's testimony. *Penagraph*, 623 S.W.2d at 343.

A reviewing court must give full deference to the factfinder's responsibility to fairly resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Hooper*, 214 S.W.3d at 13. If the record contains conflicting inferences, we must presume that the factfinder resolved such facts in favor of the verdict and defer to that resolution. *Brooks*, 323 S.W.3d at 899 n.13; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). In addition, we determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict. *Clayton*, 235 S.W.3d at 778.

"Circumstantial evidence is as probative as direct evidence in establishing guilt, and circumstantial evidence alone can be sufficient to establish guilt." *Rodriguez v. State*, 521 S.W.3d 822, 827 (Tex. App.—Houston [1st Dist.] 2017, no pet.) (citing *Sorrells v. State*, 343 S.W.3d 152, 155 (Tex. Crim. App. 2011)). Each fact need not point directly and independently to the

appellant's guilt, provided that the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Hooper*, 214 S.W.3d at 13. The factfinder may draw multiple reasonable inferences as long as each inference is supported by the evidence presented at trial. *Id*. at 15.

"A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense." TEX. CODE CRIM. PROC. ANN. art. 38.14 (West 2023). When evaluating the sufficiency of corroborating evidence under Article 38.14, we eliminate the accomplice testimony from consideration and then examine the remaining portions of the record to see if there is any evidence that tends to connect the accused with the commission of the crime. *Castillo v. State*, 221 S.W.3d 689, 691 (Tex. Crim. App. 2007). This "tends to connect" standard does not present a high threshold, as the "evidence need not prove the defendant's guilt beyond a reasonable doubt by itself." *Solomon v. State*, 49 S.W.3d 356, 361 (Tex. Crim. App. 2001); *Turner v. State,* 571 S.W.3d 283, 288 (Tex. App.—Texarkana 2019, pet. ref'd). "Rather, the [non-accomplice] evidence must simply link the accused in some way to the commission of the crime[.]" *Malone v. State*, 253 S.W.3d 253, 257 (Tex. Crim. App. 2008).

In determining whether the non-accomplice evidence tends to connect the defendant to the commission of the offense, we view the non-accomplice evidence in the light most favorable to the jury's verdict. *Turner*, 571 S.W.3d at 287. We judge the sufficiency of the non-accomplice evidence according to the particular facts and circumstances of each case. *Smith v. State*, 332 S.W.3d 425, 442 (Tex. Crim. App. 2011). When there are two permissible views of the evidence, one tending to connect the defendant to the offense and the other not tending to connect the defendant to the offense, appellate courts should defer to the view of the evidence chosen by the factfinder. *Simmons v. State*, 282 S.W.3d 504, 508 (Tex. Crim. App. 2009). Direct or circumstantial non-accomplice evidence constitutes sufficient corroboration if it shows that a rational factfinder could have found that it sufficiently tended to connect the accused to the offense. *Smith*, 332 S.W.3d at 442. As the Texas Court of Criminal Appeals explained,

> No precise rule can be formulated as to the amount of evidence required to corroborate. The non-accomplice evidence does not need to be in itself sufficient to establish guilt beyond a reasonable doubt. Nor must the non-accomplice evidence directly link the accused to the commission of the offense. While the accused's mere presence in the company of the accomplice before, during, and after the commission of the offense is insufficient by itself to corroborate accomplice testimony, evidence of such presence, coupled with other suspicious circumstances, may tend to connect the

accused to the offense. Even apparently insignificant incriminating circumstances may sometimes afford satisfactory evidence of corroboration.

*Dowthitt v. State*, 931 S.W.2d 244, 249 (Tex. Crim. App. 1996) (citations omitted). Any independent evidence tending to verify an accomplice witness's version rather than the defendant's version is corroborative, even if it pertains only to a mere detail rather than a substantive connection between the defendant and the offense. *Lee v. State*, 29 S.W.3d 570, 577 (Tex. App.—Dallas 2000, no pet.).

Accomplice testimony need not be corroborated as to every element of the offense. *Coutta v. State*, 385 S.W.3d 641, 657 (Tex. App.—El Paso 2012, no pet.); *Griffin v. State*, 936 S.W.2d 353, 357 (Tex. App.—Houston [14th Dist.] 1996, pet. ref'd). "There need be only some non-accomplice evidence tending to connect the defendant to the crime, not to every element of the crime." *Joubert v. State*, 235 S.W.3d 729, 731 (Tex. Crim. App. 2007). As the Texas Court of Criminal Appeals has explained, "[t]he corroboration requirement in Article 38.14 does not apply separately to each element of the offense charged or to each aspect of the accomplice's testimony. If that were so, there would be no value in the testimony at all." *State v. Ambrose*, 487 S.W.3d 587, 598 (Tex. Crim. App. 2016). "It is clearly unnecessary that the accomplice should be confirmed in every circumstance which he details in evidence; for there would be no occasion to use him at all as a witness if his narrative could be completely proved by other evidence free from all suspicion." *Holladay v. State*, 709 S.W.2d 194, 199 (Tex. Crim. App. 1986).

**Analysis**

"TOMA generally requires that meetings of a governmental body be open to the public." *State v. Doyal*, 589 S.W.3d 136, 141 (Tex. Crim. App. 2019); *see* TEX. GOV'T CODE ANN. § 551.002 (West 2017). Under TOMA, a "meeting" is defined, in pertinent part, as "a deliberation between a quorum of a governmental body, . . . during which public business or public policy over which the governmental body has supervision or control is discussed or considered[.]" TEX. GOV'T CODE ANN. § 551.001(4)(A) (West Supp. 2023). TOMA's definition of "governmental body" includes "a county commissioners court[.]" *Id*. § 551.001(3). A county judge is a member of his county's Commissioners Court. TEX. LOC. GOV'T CODE ANN. § 81.001(a) (West 2021) (providing that "[t]he members of the commissioners court are the county judge and the county commissioners."). "Deliberation" is defined as "a verbal or written exchange between a quorum of governmental body . . . concerning an issue within the jurisdiction of the governmental body."

TEX. GOV'T CODE ANN. § 551.001(2). A "meeting" does not include "the gathering of a quorum of a governmental body at a social function unrelated to the public business that is conducted by the body . . . if . . . any discussion of public business is incidental to the social function[.]" *Id*. § 551.001(4)(B).

Section 551.144 of TOMA, under which Appellant was prosecuted, provides that a member of a governmental body commits an offense if the member knowingly participates in a closed meeting. *Id*. § 551.144 (a)(3) (West 2017). An offense under Section 551.144 is a misdemeanor punishable by a fine of not less than $100 or more than $500, confinement in the county jail for not less than one month or more than six months, or both confinement and a fine. *Id*. § 551.144(b). As indicated by foregoing provisions of TOMA and as stated in the indictment, the State was required to prove that Appellant, as a member of a governmental body (the Angelina County Commissioners Court), knowingly participated in a meeting in violation of TOMA that constituted a quorum for the purpose of discussion or deliberation of county business involving the prospective employment of a county road engineer. *See id*. §§ 551.001, 551.002, 551.144.

It is undisputed that Smith is an accomplice as a matter of law. *See* ***Paredes v. State***, 129 S.W.3d 530, 536 (Tex. Crim. App. 2004) (holding that "[a]n accomplice as a matter of law is one who is susceptible to prosecution for the offense with which the accused is charged or a lesser included offense."). Therefore, in analyzing the sufficiency of the evidence, we must exclude Smith's testimony from consideration and examine the remaining portions of the record to determine whether there is any evidence that tends to connect Appellant to the commission of the crime. *See* TEX. CODE CRIM. PROC. ANN. art. 38.14; ***Ambrose***, 487 S.W.3d at 598; ***Castillo***, 221 S.W.3d at 691.

Setting aside Smith's testimony, the non-accomplice evidence included the surveillance video of the quorum in Appellant's office, as well as the testimony of Alexander, Lewis, Kennedy, and Clendennen. Specifically, the video showed that a quorum of the Angelina County Commissioners Court existed in Appellant's office for approximately thirty-five minutes, and both Kirby and Clendennen testified regarding the length of the video and what the video showed. Clendennen testified that Appellant did most of the talking during the meeting. In addition, the video showed that Appellant waved Smith into his office, where both he and Paulette were present. The video further showed Appellant picking up a document, showing it to Paulette, receiving a telephone call on the landline in his office, and taking notes during the phone call. When

Alexander entered Appellant's office, she heard Smith ask whether Walker would be present the next day because Smith wanted to question Walker, and Alexander heard Appellant tell Smith that Walker would be in attendance. Before the trier of fact was a copy of a news article, in which Appellant is quoted as saying that the meeting was "inappropriate," as well as Kirby's testimony regarding the article. Moreover, both Lewis and Kennedy testified that a quorum of the Commissioners Court existed in Appellant's office.

As discussed above, the "tends to connect" standard is not a high threshold, and the non-accomplice evidence need not prove Appellant's guilt beyond a reasonable doubt by itself. *See Solomon*, 49 S.W.3d at 361. Furthermore, the corroboration requirement of Article 38.14 does not apply separately to each element of the charged offense or to each aspect of the accomplice's testimony. *See Ambrose*, 487 S.W.3d at 598; *Joubert*, 235 S.W.3d at 731; *Holladay*, 709 S.W.2d at 199. When there are two permissible views of the evidence, one of which tends to connect the defendant to the offense and the other which does not tend to connect the defendant to the offense, we defer to the view of the evidence chosen by the factfinder. *See Simmons*, 282 S.W.3d at 508. We conclude that a rational trier of fact could have concluded that the aforementioned non-accomplice evidence tends to connect Appellant to the offense, and that Smith's testimony was therefore sufficiently corroborated. *See Ambrose*, 487 S.W.3d at 598; *Castillo*, 221 S.W.3d at 691; *Solomon*, 49 S.W.3d at 361; *see also* TEX. CODE CRIM. PROC. ANN. art. 38.14. Accordingly, we overrule issue one.

In addition to the non-accomplice testimony summarized above, the trial court heard Smith testify that although he and Paulette engaged in small talk for a few minutes after Smith entered Appellant's office, the three men spent the rest of the time discussing what was in the packet Smith received, including what was on the agenda, that Walker would attend court the next day, and their intention for Paulette to make a motion to hire Walker as county road engineer and for Smith to second the motion. Smith further testified that they discussed Walker's employment history and matters pertaining to the budget.

Reviewing the evidence in the light most favorable to the trial court's judgment and giving full deference to the trial court's role, as factfinder, to weigh the evidence and to draw reasonable inferences from basic facts to ultimate facts, we conclude that a rational trier of fact could have found Appellant "guilty" beyond a reasonable doubt of violating TOMA. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2786-87, 2789; *Brooks*, 323 S.W.3d at 902 n.19; *Clayton*, 235 S.W.3d at 778;

*Hooper*, 214 S.W.3d at 13; *Bonham*, 680 S.W.2d at 819; *Penagraph*, 623 S.W.2d at 343; *see also* TEX. GOV'T CODE ANN. §§ 551.001, 551.002, 551.144.  Accordingly, we overrule issue two.

<u>DISPOSITION</u>

Having overruled both of Appellant's issues, we ***affirm*** the trial court's judgment.

<u>GREG NEELEY</u>
Justice

Opinion delivered February 29, 2024.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(PUBLISH)



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**FEBRUARY 29, 2024**

**NO. 12-23-00191-CR**

**MEYDON LYMBERRY,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

---

Appeal from the 217th District Court

of Angelina County, Texas (Tr.Ct.No. 2022-0703)

---

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this Court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below be in all things affirmed, and that this decision be certified to the court below for observance.

Greg Neeley, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*